UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, | Case No. **COMPLAINT** **JURY DEMAND** |
| Plaintiffs, | |
| v. | |
| TACOMA THERAPY, INC., TACOMA REHABILITATION THERAPY, INC., P.S., ANDREW JACOBS, MELANIE JACOBS, NANDY, INC., NATHAN LEMINGS and JANE DOE LEMINGS, husband and wife, and the marital property thereof, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC., WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN, husband and wife, and the marital property thereof, DOES 1-100 and ROES 101-200, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, (hereinafter collectively referred to as "Plaintiffs" or "Allstate"), by and through their attorneys of record of the law

COMPLAINT - 1

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   firm McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP, hereby

2   submit the following Complaint for Damages against Defendants, TACOMA THERAPY,

3   INC., TACOMA REHABILITATION THERAPY, INC., P.S., ANDREW JACOBS,

4   MELANIE JACOBS, NANDY, INC., NATHAN LEMINGS and JANE DOE LEMINGS,

5   husband and wife, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC., and

6   WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN, husband and wife, DOES 1-

7   100 and ROES 101-200 as more fully set forth below.

8   **DEMAND FOR JURY TRIAL**

9   1.   Plaintiffs hereby demand a trial by jury on all issues, counts, claims and

10   allegations contained within this Complaint or to be pleaded in the future, if necessary.

11   **JURISDICTION AND VENUE**

12   2.   This action is brought under the federal Racketeer Influenced and Corrupt

13   Organization Act ("RICO Act"), 18 U.S.C. §1961, *et seq.*, and various other Washington

14   common law doctrines and/or statutes.  Jurisdiction is vested in this Court by virtue of 17

15   U.S.C. §501(b) and 28 U.S.C. §1331.  Plaintiffs' claims brought under Washington law are

16   so related to Plaintiffs' Federal claims, over which this Court has original jurisdiction, that

17   they form part of the same case or controversy.   Under Article III of the United States

18   Constitution, the Court has supplemental jurisdiction over Plaintiffs' Washington common

19   law and/or statutory claims pursuant to 28 U.S.C. §1367.

20   3.   This Court further and alternatively has jurisdiction over this action

21   pursuant to 28 U.S.C. §1332(a) based upon diversity of citizenship.  Plaintiffs are citizens

22   and residents of the State of Illinois.  Defendants are citizens and residents of the State of

23   Washington, and have their principal places of business in the State of Washington.  The

24   amount in controversy exceeds $75,000 exclusive of interest and costs.

25   4.   A substantial part of the acts and omissions giving rise to the claims stated

26   herein occurred in this District (within the cities of Tacoma and Puyallup, in the state of

27   Washington) and all Defendants are found in this District.  Venue is proper in this District

COMPLAINT - 2

**McCormick, Barstow, Sheppard,**
**Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1 and this Division pursuant to 28 U.S.C. §§1391(b)(2) and (3) and pursuant to 18 U.S.C.

2 §1965(b).

3 **PARTIES TO THIS LITIGATION**

4 5.     Plaintiff, ALLSTATE INSURANCE COMPANY, is a corporation

5 incorporated under the laws of the state of Illinois, with its principal place of business in

6 Illinois.

7 6.     Plaintiff, ALLSTATE PROPERTY & CASUALTY INSURANCE

8 COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its

9 principal place of business in Illinois.

10 7.     Plaintiff, ALLSTATE INDEMNITY COMPANY, is a corporation

11 incorporated under the laws of the state of Illinois, with its principal place of business in

12 Illinois.

13 8.     Plaintiff, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, is a

14 corporation incorporated under the laws of the state of Illinois, with its principal place of

15 business in Illinois.

16 9.     Defendant, TACOMA THERAPY, INC. (also known as Tacoma Massage

17 Therapy, hereinafter "TMT"), is and at all relevant times was, a corporation organized

18 under the laws of the State of Washington, with locations in, Tacoma, WA, and Puyallup,

19 WA.  Plaintiffs further allege that at all relevant times Defendants ANDREW JACOBS

20 and MELANIE JACOBS maintained ownership and/or control over, and/or managed TMT

21 and that they were controlling officers of TMT.  Plaintiffs are further informed and believe

22 that at all times relevant herein, ANDREW JACOBS and MELANIE JACOBS derived a

23 monetary profit from or had a financial interest in TMT.  Plaintiffs are further informed

24 and believe that ANDREW JACOBS and MELANIE JACOBS sold their interest in TMT

25 in or around September 2012.

26 10.    Defendant, TACOMA REHABILITATION THERAPY, INC., P.S.,

27 formerly operating as Tacoma Rehabilitation Therapy, Inc., (hereinafter "TRT"), is, and at

COMPLAINT - 3

**McCormick, Barstow, Sheppard,
Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    all relevant times was, a corporation organized under the laws of the State of Washington,

2    with locations in Tacoma, WA, and Puyallup, WA.  Plaintiffs further allege that at all

3    relevant times Defendants ANDREW JACOBS and MELANIE JACOBS maintained

4    ownership and/or control over, and/or managed TRT and that they were controlling

5    officers of TRT.  Plaintiffs are further informed and believe that at all times relevant

6    herein, ANDREW JACOBS and MELANIE JACOBS derived a monetary profit from or

7    had a financial interest in TRT.  Plaintiffs are further informed and believe that ANDREW

8    JACOBS and MELANIE JACOBS sold their interest in TRT in around September 2012.

9        11.    Defendant, ANDREW JACOBS, is a competent adult, and at all relevant

10   times, is and was a resident of the State of Washington.  ANDREW JACOBS at all

11   relevant times was a managerial employee and/or agent of the other defendants.

12   ANDREW JACOBS participated in each of the wrongful acts, omissions and conduct

13   described below and/or had actual and/or constructive notice of the wrongful acts,

14   omissions and conduct perpetrated upon Plaintiffs, as set forth below.  At all times relevant

15   herein, ANDREW JACOBS had both the authority and duty to prevent and correct the

16   same, and by his conduct condoned, supported and ratified such wrongful acts, omissions

17   and/or conduct described herein.

18       12.    Defendant, MELANIE JACOBS, is a competent adult, and at all relevant

19   times, is and was a resident of the State of Washington.  MELANIE JACOBS at all

20   relevant times was a managerial employee and/or agent of the other defendants.

21   MELANIE JACOBS participated in each of the wrongful acts, omissions and conduct

22   described below and/or had actual and/or constructive notice of the wrongful acts,

23   omissions and conduct perpetrated upon Plaintiffs, as set forth below.  At all times relevant

24   herein, MELANIE JACOBS had both the authority and duty to prevent and correct the

25   same, and by her conduct condoned, supported and ratified such wrongful acts, omissions

26   and/or conduct described herein.

27       13.    Defendants ANDREW JACOBS and MELANIE JACOBS are husband and

COMPLAINT - 4

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  wife and form a marital community under the laws of the State of Washington.  All acts by

2  either were done on behalf of and in furtherance of their marital community.

3      14.    Defendant, NANDY, INC. (hereinafter "NANDY"), at all relevant times was

4  a corporation organized under the laws of the State of Washington.  Plaintiffs further allege

5  that Defendant NATHAN LEMINGS at all relevant times maintained ownership and/or

6  control over, and/or managed NANDY and that he is the controlling officer of NANDY.

7  Plaintiffs are further informed and believe that at all times relevant herein, Defendant

8  NATHAN LEMINGS derived a monetary profit from or had a financial interest in

9  NANDY.

10      15.    Defendant, NATHAN LEMINGS (hereinafter "LEMINGS"), is a competent

11  adult, and a resident of the State of Washington.  LEMINGS is, and at all relevant times

12  was, a managerial employee and/or agent of the other defendants.  LEMINGS participated

13  in each of the wrongful acts, omissions and conduct described below and/or had actual

14  and/or constructive notice of the wrongful acts, omissions and conduct perpetrated upon

15  Plaintiffs, as set forth below.  At all times relevant herein, LEMINGS had both the

16  authority and duty to prevent and correct the same, and by his conduct condoned,

17  supported and ratified such wrongful acts, omissions and/or conduct described herein.

18      16.    Defendant LEMINGS is believed to be a married person.  Defendants

19  LEMINGS and JANE DOE LEMINGS are and were at all material times husband and

20  wife and form a marital community under the laws of the State of Washington.  All acts by

21  either were done on behalf of and in furtherance of their marital community.  The true first

22  name of JANE DOE LEMINGS is not known at this time and so she is sued under the

23  fictional name JANE DOE LEMINGS.

24      17.    Defendant, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC.

25  (hereinafter "MCLAUGHLIN LAW"), is, and at all relevant times was, a corporation

26  organized under the laws of the State of Washington, with an office in Tacoma, WA.

27  Plaintiffs further allege that Defendant WESLEY MCLAUGHLIN at all relevant times

COMPLAINT - 5

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   maintained ownership and/or control over, and/or managed MCLAUGHLIN LAW and

2   that he is a controlling officer of MCLAUGHLIN LAW.  Plaintiffs are further informed

3   and believe that at all times relevant herein, WESLEY MCLAUGHLIN derived a

4   monetary profit from or had a financial interest in MCLAUGHLIN LAW.

5        18.   Defendant, WESLEY MCLAUGHLIN, is a competent adult, and a resident

6   of the State of Washington.  WESLEY MCLAUGHLIN is, and at all relevant times was, a

7   managerial employee and/or agent of the other defendants.  WESLEY MCLAUGHLIN

8   participated in each of the wrongful acts, omissions and conduct described below and/or

9   had actual and/or constructive notice of the wrongful acts, omissions and conduct

10  perpetrated upon Plaintiffs, as set forth below.  At all times relevant herein, WESLEY

11  MCLAUGHLIN had both the authority and duty to prevent and correct the same, and by

12  his conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct

13  described herein.

14       19.   Defendant WESLEY MCLAUGHLIN is believed to be a married person.

15  Defendants WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN are and were at

16  all material times husband and wife and form a marital community under the laws of the

17  State of Washington.  All acts by either were done on behalf of and in furtherance of their

18  marital community.  The true first name of JANE DOE MCLAUGHLIN is not known at

19  this time and so she is sued under the fictional name JANE DOE MCLAUGHLIN.

20                      **ALLEGED CO-CONSPIRATORS**

21       20.   The Plaintiffs are informed and believe that there are various physicians,

22  chiropractors, attorneys, entities, and other individuals in and around Tacoma and Puyallup

23  that have conspired with the above Defendants to defraud The Plaintiffs.  The Plaintiffs

24  reserve the right to amend their complaint to add said DOE and ROE physicians,

25  chiropractors, attorneys, entities, and other individuals and entities as Defendants in this

26  matter as their identities are ascertained.

27           **FACTUAL ALLEGATIONS COMMON TO EACH COUNT**

COMPLAINT - 6

**McCormick, Barstow, Sheppard,
Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

21.     The Plaintiffs re-allege and restate paragraphs 1 through 20 as if fully set forth herein.

22.     This Complaint involves payments that Plaintiffs made to, and/or on behalf of, approximately two hundred (200) claimants who were involved in automobile accidents in the State of Washington.  Such claimants were individuals who either made claims against the Plaintiffs' insureds (third party claimants) or who were making claims as the Plaintiffs' insureds (first party claimants).

23.     Attached to this Complaint as Exhibit A is a list of the specific claimants that the Plaintiffs are claiming, at this time, were either treated or represented by the Defendants and as a consequence of this treatment and/or representation the Plaintiffs sustained substantial monetary damages. Generally, the claimants listed in Exhibit A had interactions with the Defendants between 2006 and the filing of this action.  This list of claimants is incorporated herein by reference when reference is made to the underlying claims that form the basis of this litigation.[1]

24.     Each of the claimants involved in the claims identified in Exhibit A, whether third party claims or first party claims, were billed for services (e.g., massage therapy or physical therapy) allegedly provided for their personal injuries by TMT and/or TRT between 2006 and the filing of this action, and received a settlement payment from the Plaintiffs pursuant to insurance policies issued by the Plaintiffs, or the Plaintiffs compensated TMT and TRT directly for invoices charged to the claimants from TMT and/or TRT.

25.     The Plaintiffs allege that TMT and TRT, at all relevant times, were operating as illegal entities because they were committing the corporate practice of medicine and in violation of the Washington Professional Services Corporation Act, RCW 18.100, *et seq.*

---

[1] Exhibit A identifies patients by initials, date of loss, Allstate claim number and whether they were represented by McLaughlin at McLaughlin Law.  Patient names have not been provided in order protect patient confidentiality.  However, once a Qualified Protective Order is in place, the patients' full  identities will be disclosed.

COMPLAINT - 7

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    All billing for purported services rendered by and through these illegal entities was

2    therefore illegal and unenforceable.

3         26.    The Plaintiffs allege that the Defendants, and each of them, caused to be

4    presented to the Plaintiffs bills from an illegal entity as well as grossly exaggerated bills for

5    treatment that was either not performed, medically unnecessary and/or inadequately

6    performed on the claimants identified in Exhibit A.

7         27.    The Plaintiffs further allege that the Defendants prepared and/or caused to be

8    presented to the Plaintiffs, between 2006 and the filing if this action, medical reports and

9    billing records that falsely reported symptoms, complaints and damages for each of the

10   claimants identified in Exhibit A which were either exaggerated or not supported at all by

11   the facts of the accident, that made pre-programmed, unsubstantiated findings and

12   diagnoses and which prescribed treatment plans which were more consistent with creating

13   or exaggerating claims rather than patient-centered and evidence-based treatment of

14   patients' actual clinical conditions.

15        28.    Upon a claimant presenting at TMT and/or TRT for treatment, the

16   Defendants would begin by requiring the claimants to execute a lien that required payment

17   for the medical services provided to be made out of any settlement or judgment the

18   claimant might obtain.  Accordingly, at all times the Defendants knew that the liens for

19   these claimants ultimately would be paid by insurance money through Personal Injury

20   Protection (hereinafter "PIP"), settlement or a judgment in the claimants' favor.  Generally,

21   patients of TMT/TRT were not sent copies of actual medical bills for services incurred

22   during their treatment and therefore they did not know the  amount they were being charged

23   for the services and for what services they were being charged.

24        29.    After rendering their purported treatment to the claimants, TMT/TRT would

25   then submit to the claimants' personal injury attorney, medical records and invoices for

26   massage therapy and physical therapy services purportedly performed.  At all times, the

27   Defendants knew that these invoices and medical records would be used to substantiate the

COMPLAINT - 8

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   claimants' injury claims and that insurers such as the Plaintiffs would eventually receive

2   the invoices and medical records as part of a claim for PIP or in a settlement demand

3   package in the injury case.  At all times, the Defendants herein knew that insurers such as

4   the Plaintiffs would receive and rely upon the medical reports and billings to evaluate and

5   determine settlement positions in the injury cases to which they pertained.

6        30.     Where TMT/TRT would be paid from settlement proceeds, it was the goal of

7   the Defendants to get the medical specials as high as possible by inflating their bills or for

8   billing for services never provided.  This was accomplished by providing and billing for

9   unnecessary medical treatment.  This conduct was known by the other Defendants to be

10  occurring.

11       31.     Upon settlement of the personal injury claim, or upon the entry of a judgment

12  in the claimant's favor, the claimant's personal injury counsel would receive a payment

13  from an insurance company to fund the settlement or satisfy the judgment.

14       32.     TMT/TRT would enforce its medical lien after the claimants and/or their

15  legal counsel, such as MCLAUGHLIN and MCLAUGHLIN LAW, received these

16  proceeds from the Plaintiffs.  Thus, payment for massage therapy and physical therapy

17  services were all based upon PIP payments, settlement or judgment in the underlying claim,

18  with the understanding in every case that insurance money from the Plaintiffs would

19  provide the proceeds.

20       33.     In cases involving first party claims, after rendering their purported care to

21  the claimants, TMT and TRT, at the direction of ANDREW JACOBS and LEMINGS,

22  would then submit medical records and invoices for therapy directly to insurance

23  companies, including the Plaintiffs.

24       34.     At all times, in cases involving first party claims, Defendants TMT and TRT,

25  by and through the direction of ANDREW JACOBS and LEMINGS, knew that insurers

26  such as the Plaintiffs would receive and rely upon the medical  records and invoices for

27  therapy to evaluate and determine payments to TRT and TMT in the injury cases to which

COMPLAINT - 9

**McCormick, Barstow, Sheppard,**
**Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  they pertained.

2      35.    The Plaintiffs in the normal and due course, received and reasonably relied

3  upon the reports and bills from the Defendants.  It was foreseeable to the Defendants that

4  this would occur and that the Plaintiffs would rely on this information.

5      36.    Further, the Plaintiffs did reasonably rely upon this documentary information

6  to their detriment in investigating and evaluating claims and determining the amounts to

7  pay in PIP and settlement of the claims being made by or against the Plaintiffs' insureds.

8      37.    TMT, at all relevant times herein, was in the business of providing massage

9  therapy services.

10     38.    TRT, at all relevant times herein, was in the business of providing physical

11 therapy services.

12     39.    ANDREW JACOBS and MELANIE JACOBS, at all relevant times herein,

13 had a financial interest in both TMT and TRT.

14     40.    ANDREW JACOBS, at all relevant times herein, was a controlling corporate

15 officer and/or director of both TMT and TRT.

16     41.    MELANIE JACOBS, at all relevant times herein, was a controlling corporate

17 officer and/or director of both TMT and TRT.

18     42.    The Plaintiffs are informed and believe, and thereon allege, that ANDREW

19 JACOBS has never been licensed in the State of Washington as a massage practitioner or a

20 physical therapist.

21     43.    The Plaintiffs are informed and believe, and thereon allege, that MELANIE

22 JACOBS has never been licensed in the State of Washington as a physical therapist.

23     44.    MELANIE JACOBS, a licensed massage practitioner in the State of

24 Washington, along with ANDREW JACOBS, formed TMT in 2006 using MELANIE

25 JACOBS' license.  ANDREW JACOBS incorporated TMT and became the President and a

26 controlling officer. Thereafter, MELANIE JACOBS assisted ANDREW JACOBS in

27 forming the fraudulent scheme by drafting policies and procedures for TMT/TRT. During

COMPLAINT - 10

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   the existence of TMT and TRT, MELANIE JACOBS provided virtually no managerial

2   control over the day to day operations and allowed her unlicensed husband, ANDREW

3   JACOBS, to conduct the fraudulent scheme of which they both conceived.

4        45.    In 2008, MELANIE JACOBS and ANDREW JACOBS formed TRT and as

5   its owners and controlling officers, ran an illegal operation, as neither of them have ever

6   been licensed as physical therapists in the State of Washington.

7        46.    ANDREW JACOBS and MELANIE JACOBS, through their ownership

8   and/or control of TMT and TRT, at all relevant times herein, were in committing the

9   corporate practice of medicine in violation of the Washington Professional Services

10  Corporation Act, RCW 18.100*, et seq.* As such all bills derived therefrom are illegal,

11  unreasonable and unnecessary.

12       47.    ANDREW JACOBS and MELANIE JACOBS, by and through their

13  ownership and/or control of TMT and TRT, and each of them, allowed employees to

14  provide massage therapy and physical therapy to patients.

15       48.    At all relevant times herein, the massage practitioners at TMT and physical

16  therapists at TRT were properly characterized as employees and not independent

17  contractors.

18       49.    The Washington Department of Labor and Industries (hereinafter "L&I")

19  audited TMT and TRT between the period of April 1, 2010 through March 31, 2011.  As a

20  result of that audit, L&I found that TMT and TRT did not pass the requirements of RCW

21  51.08.180 and 51.08.181, as they were improperly characterizing its workers as

22  independent contractors.  L&I determined that the workers were in fact "employees" as

23  they, among other things, were not free from the direction and control of TMT/TRT and its

24  owner ANDREW JACOBS.

25       50.    ANDREW JACOBS and MELANIE JACOBS exerted dominion and control

26  over employees by instituting policies and procedures at TMT/TRT which set in motion the

27  fraudulent scheme.

COMPLAINT - 11

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

51.   ANDREW JACOBS and MELANIE JACOBS together drafted, signed and issued a handbook to its employees entitled <u>Tacoma Therapy, Inc. Office Policy Handbook</u> ("The Handbook"), in which they listed themselves as "owners." The Handbook describes the following policies and procedures:

**Marketing**:

"The Marketing Director is required to schedule and have lunches with Medical Groups and build relationships so that they will send us referrals.  You are expected to make sure that Tacoma Therapy, Inc. stays busy with referrals.  Make sure you keep track of which referrals sources are sending us business and thank them."

"Tacoma Therapy Inc. spends a lot of money on marketing to physicians and other referral sources."

**Patient Retention**:

"It is the therapists job to keep up on the referral script from the physicians.  This means that you need to make sure the physicians are renewing their prescriptions and the patient is following through with care.  In order to get the visits that you feel the patients need you may have to write a report to the referring physician explaining why you think more visits are necessary."

"Therapists need to let the patients know that if they quit getting massages when they are feeling better, they will probably relapse and will have to start the process over."

"You also need to let the patient know that if they do not get the problem fixed now (while insurance is paying for it), they will have to fix it later on their own dime."

"Treatment for a motor vehicle accident should be anywhere from 5 to 8 months.  Every patient is different, but we should set our target goal at 41 visits.  You may go a little over this and in some cases you may go a little below this target goal.  This policy applies for both PIP and 3rd Party claims.  With regard to L&I patients, treat them as long as L&I will allow.  **If our contracted therapists lose a patient,**

COMPLAINT - 12

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

**before they are seen 32 times, the treating therapist is required to write a report explaining in detail why they lost the patient.**  That report needs to be given to the owners of Tacoma Therapy, Inc. immediately.  At that time, the owners will review the report and will look into the situation further.  A meeting between the said therapist and the owners may be called to discuss the situation.  We take this extremely serious and want to avoid losing patients.  This is probably the most important policy Tacoma Therapy, Inc. has.  It is inexcusable to let this go on."

52.    Employees at TMT/TRT could be and were fired if they did not meet their minimum quotas as stated in The Handbook.  The threat of being fired for not meeting the minimum pre-programmed quotas caused the TMT/TRT employees to treat patients well beyond what was reasonable and necessary.  Examples of these excessive visits include, but are not limited to, the claims of D.R. (47 visits to TMT - See Exhibit A, Line 144); R.S.H. (49 visits to TMT – See Exhibit A, Line 151), P.W. (54 visits to TMT, See Exhibit A, Line 193), T.F., (46 visits to TMT – See Exhibit A, Line 48), S.P. (56 visits to TMT – See Exhibit A, Line 133), G.N. (59 visits to TMT –See Exhibit A, Line 124).

53.    Beyond the threat of being fired, ANDREW JACOBS also instituted what can be described as a the "Patient Retention Program" at TMT and TRT which unethically incentivized the staff to see patients beyond what was medically necessary.  Although the required numbers have changed over time, generally TMT's massage practitioners were required to see at least 35 patients per week and TRT's physical therapists were required to see 15 patients per day.  Further, the TMT massage practitioners were told to see individual patients, at a minimum, for 32 total visits, and would receive cash bonuses if they hit the target of 41 visits.  The massage practitioners, for example, would receive a $50 bonus for providing a patient with 32 massages, and a $150 bonus for 41 massages.

54.    The Patient Retention Program was diligently tracked on a form that was kept within the claimant's medical file.  However, the billing coordinator, Meghan Lawrence, was instructed by ANDREW JACOBS to not disclose that form pursuant to a subpoena or

COMPLAINT - 13

1  request for medical records from an insurance company.  To do so would have tipped off an

2  insurance company to their fraudulent scheme of predetermined care, which blatantly

3  disregarded the medical necessity of such treatment in favor of unethically building up

4  TMT/TRT's medical specials.

5      55.    Employees of TMT and TRT were known to track down patients to get them

6  to come in for more treatment so they could get their bonuses and to meet their required

7  quota.

8      56.    ANDREW JACOBS instructed his employees to bill up to a certain dollar

9  amount ($6,500) on massage, because billing more than that amount would not be

10  convincing to a judge or arbitrator.  Thus, the treatment focus was clearly not on patient

11  care, but rather how much TMT and TRT could feasibly collect from insurance companies.

12     57.    In third party claims, ANDREW JACOBS required the massage practitioners

13  and physical therapists to cease treating their patient if the patient was unrepresented after 5

14  visits. ANDREW JACOBS  called these patients a "financial liability." The patients were

15  regarded as a "financial liability" because TMT and TRT were set up to make a profit

16  through auto accident insurance proceeds and L&I claims, and without representation, they

17  would not be able to perpetuate their fraudulent scheme as an individual patient paying out

18  of their own pocket would not agree to the excessive treatment and egregious billing.

19     58.    The treatment which both TMT and TRT provided was based upon a

20  standardized pattern with the express purpose of creating inflated medical bills that would

21  be used to leverage artificially enhanced settlement values or direct payments to be paid by

22  insurance companies rather than providing patient-centered treatment with the goal of

23  actually healing injuries.  The Defendants, and each of them, caused to be presented to the

24  Plaintiffs bills from an illegal entity and also grossly exaggerated bills for treatment that

25  was medically unnecessary for claims identified in Exhibit A.

26     59.    The Plaintiffs further allege that all the Defendants prepared and/or caused to

27  be presented to the Plaintiffs, between 2006 and the present, medical reports and billing

COMPLAINT - 14

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   records that falsely reported symptoms, complaints, and injuries for the claimants identified

2   in Exhibit A which were either exaggerated or not supported at all by the facts of the

3   accident, that made pre-programmed, unsubstantiated findings and diagnoses and which

4   prescribed treatment plans which were more consistent with generating large medical bills

5   rather than patient-centered and evidence-based treatment of the patients' actual clinical

6   conditions.

7      60.   An example of falsely reported symptoms and/or complaints are found in the

8   following claim listed within Exhibit A: Claimant N.D., (Exhibit A, Line 39) stated under

9   oath that he did not complain of numbness, dizziness or weakness, yet these symptoms are

10  listed within this claimant's records from TMT/TRT.

11     61.   TMT's and TRT's reports and records, including SOAP (Subjective,

12  Objective, Assessment, Prognosis) notes, for claimants were prepared under the direction

13  of ANDREW JACOBS.  TMT's and TRT's reports were filled with substantially similar

14  descriptions and virtually identical statements, regardless of the actual circumstances of the

15  accident, or the age and physical condition of the claimant, all designed to misrepresent the

16  need for ongoing treatment.  SOAP notes were often filled out before patients were seen or

17  simply copied from the prior visit without any substantive changes.  Typically, TMT's and

18  TRT's patient records reported generic symptoms and conditions not related to any specific

19  patient's presentation.  Based upon such reports, patients were treated according to a

20  "recipe" of medically unnecessary care consisting of primarily excessive, duplicative, and

21  unnecessary massage therapy and physical therapy from.

22     62.   ANDREW JACOBS required the massage practitioners and physical

23  therapists at TMT and TRT to bill for treatment that was not rendered.

24     63.   ANDREW JACOBS instructed the massage therapists to bill for 4 units (1

25  hour) of treatment regardless of the amount of therapy actually received by the patient (i.e.

26  2 units for 30 minutes).  An example of this can be found in the claim of D.G. (Exhibit A,

27  Line 56), where the vast majority of his massage therapy treatments were 45 minutes (3

COMPLAINT - 15

**McCormick, Barstow, Sheppard,**
**Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    units), but yet he was billed for 1 hour (4 units) treatments.  ANDREW JACOBS further

2    instructed employees to bill for visits even if that patient did not show for treatment.

3         64.    ANDREW JACOBS instructed the physical therapists to bill for more units

4    of treatment regardless if the patient needed the treatment or even received the treatment.

5    This was required of the physical therapists in order to increase the amount of physical

6    therapy bills.

7         65.    Plaintiff's further allege that ANDREW JACOBS, through TMT and TRT,

8    provided improper financial benefits to physicians and chiropractors as "kickbacks" in

9    order to obtain new patient referrals and continued patient referrals to TMT and TRT.  Such

10   referrals were often at the request of TMT and TRT staff, under the direction of ANDREW

11   JACOBS and LEMINGS.   Examples of kickbacks include: tickets to Seattle Sounders

12   games in a suite with ANDREW JACOBS, catered lunches provided to physicians and

13   chiropractors offices by a chef employed by TMT/TRT, complimentary massages at TMT,

14   Trans-Siberian Orchestra tickets, joint real estate investments, loans for properties and

15   businesses, and other gifts.   Such activities are in violation of the Washington Anti-

16   Rebating Statute and constitute a misdemeanor, RCW 19.68, *et seq*.  In order to facilitate

17   this "kickback" program, ANDREW JACOBS "thanked" the referral providers by spending

18   $20,000 per month on what he called "marketing."

19        66.    ANDREW  JACOBS  required  the  massage  practitioners  and  physical

20   therapists to make sure that their patients were referred to each other in order to increase

21   the amount of total bills, regardless if the patient needed the treatment or not.  Employees

22   believed they could be fired if they did not implement this referral scheme.

23        67.    After TRT came into existence in 2008, the vast majority of their patients

24   received  treatment  at  both  TMT  and  TRT  via  referrals  from  a  medical  doctor  or

25   chiropractor.  Referral doctors many times automatically referred patients to TMT/TRT

26   prior to seeing the patients.  Patients were also not given a choice to choose alternative

27   facilities.  TMT and TRT staff would arrange for referrals on behalf of patients in order to

COMPLAINT - 16

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    assure they would be sent back to either TMT or TRT.  Patients were automatically sent to

2    TMT or TRT and rarely anywhere else.  Such activities are in violation of the Washington

3    Anti-Rebating Statute and constitute a misdemeanor, RCW 19.68, *et seq.*

4        68.    TMT, TRT, ANDREW JACOBS and MELANIE JACOBS never disclosed

5    to their patients in writing that there was common ownership between TMT and TRT and

6    likewise the patients were never provided alternative places to treat.  Such activities are in

7    violation of the Washington Anti-Rebating Statute and constitute a misdemeanor, RCW

8    19.68, *et seq.*

9        69.    WESLEY MCLAUGHLIN, the owner of MCLAUGHLIN LAW,

10   represented over forty-six percent (46%) of the claimants listed in Exhibit A.

11       70.    WESLEY MCLAUGHLIN holds mutual investments with ANDREW

12   JACOBS, including, but not limited to, Lakewood's Finest (a warehouse and rental

13   property) and Salstrom Motors (an automobile dealership in Tacoma).

14       71.    At all times relevant herein, WESLEY MCLAUGHLIN provided his

15   employee, LEMINGS to ANDREW JACOBS and TMT/TRT to act also as an employee,

16   contractor and/or agent of TMT/TRT to implement the fraudulent scheme described above.

17       72.    WESLEY MCLAUGHLIN listed LEMINGS on the MCLAUGHLIN LAW

18   letterhead, implying that LEMINGS was an attorney when he was not.

19       73.    At TMT/TRT, LEMINGS was responsible for hiring and firing employees.

20   In fact, he fired employees for not meeting their patient retention quota as described above.

21   LEMINGS was signatory on the TMT/TRT bank accounts from Valley Bank and signed

22   payroll checks for employees. LEMINGS further ran weekly and monthly meetings at

23   TMT/TRT to make sure the fraudulent scheme was being implemented.

24       74.    LEMINGS owns and/or controls NANDY, which he, at all relevant times

25   herein, operated in support of his positions at TMT, TRT, and MCLAUGHLIN LAW. For

26   example, WESLEY MCLAUGHLIN, provided MCLAUGHLIN LAW business cards for

27   TMT/TRT employees and LEMINGS to hand out to TMT/TRT patients and while

COMPLAINT - 17

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  WESLEY MCLAUGHLIN'S name was listed as the attorney on the business card, the

2  phone number was owned and controlled by NANDY and answered by LEMINGS. This

3  and among other things, allowed LEMINGS, through MCLAUGHLIN LAW and NANDY

4  to participate in the unauthorized practice of law.

5      75.    MCLAUGHLIN, as an attorney, is responsible for representing to insurance

6  companies what the insurers are to pay for his client's claim and in doing so, sends letters

7  demanding payment, alleging that the bills are legitimate.  MCLAUGHLIN, as an attorney,

8  gives the appearance of credibility to the bills as legitimate, when in fact they are not.

9  MCLAUGHLIN had knowledge that TMT and TRT, at all relevant times, were illegal

10  entities and rendering excessive and unnecessary care. He gained this knowledge not only

11  through his personal and investment relationship with ANDREW JACOBS, but also

12  through his employee LEMINGS whom had managerial control at both MCLAUGHLIN

13  LAW and TMT/TRT.

14      76.    ANDREW JACOBS, WESLEY MCLAUGHLIN and LEMINGS devised a

15  referral scheme wherein TMT and TRT patients are referred to MCLAUGHLIN LAW.

16  ANDREW JACOBS and LEMINGS instructed all employees of TMT and TRT to refer

17  "new" patients to MCLAUGHLIN LAW.  Employees that referred a patient from TMT or

18  TRT to MCLAUGHLIN LAW were given bonuses for this unethical behavior, specifically

19  a $100 cash bonus or gift card for each referral. Further, select staff at TMT and TRT

20  received year-end bonuses (i.e. iPods, North Face Jackets, hotel stays, dinners and spa gift

21  cards, etc.) for referring the most patients to MCLAUGHLIN LAW that year. These

22  referral bonuses were paid by MCLAUGHLIN LAW and WESLEY MCLAUGHLIN and

23  handed out by LEMINGS.  The referrals and bonuses were a routine part of doing business

24  at TMT and TRT, and were coordinated by LEMINGS.  Because TMT and TRT staff were

25  required to refer to MCLAUGHLIN LAW, this allowed ANDREW JACOBS, LEMINGS,

26  and WESLEY MCLAUGHLIN to maintain control of the scheme to inflate settlements.

27      77.    ANDREW JACOBS and LEMINGS also required the massage therapists

COMPLAINT - 18

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    and physical therapists to encourage already represented patients to meet with LEMINGS

2    at MCLAUGHLIN LAW to get a "second opinion" in order to encourage them to change

3    counsel. This would serve to increase the pie of money being filtered through the

4    Defendant entities.

5        78.    MCLAUGHLIN LAW, by and through WESLEY MCLAUGHLIN and

6    LEMINGS, would also refer clients to TMT and TRT, despite knowing that they, among

7    other things, were illegal entities.

8        79.    If a patient was unrepresented and referred to MCLAUGHLIN LAW,

9    LEMINGS would often meet the patients at the TMT/TRT facilities to sign them up and fill

10   out paperwork for  MCLAUGHLIN LAW. Many of these patients believed LEMINGS to

11   be their attorney as he passed himself off as such.  An example of this is seen in the claim

12   of M.K. (See Exhibit A, Line 94) wherein he stated within his records that LEMINGS was

13   his attorney from MCLAUGHLIN LAW.  LEMINGS had substantial influence over the

14   claimants and the billing practices as he was a common employee of TMT/TRT and

15   MCLAUGHLIN LAW. This allowed the Defendants to send a steady stream of claimants

16   to MCLAUGHLIN LAW and simultaneously enforce the Patient Retention Program,

17   predetermined care and billing for treatment not rendered.

18       80.    In cases involving liability claims, after rendering their purported care to the

19   claimants, TMT and TRT, at the direction of ANDREW JACOBS and LEMINGS, would

20   then submit to the claimants' respective legal counsel, including but not limited to

21   MCLAUGHLIN LAW, medical records and invoices for therapy.  The claimants' counsel,

22   including but not limited to MCLAUGHLIN LAW, used the inflated billings statements as

23   leverage to extract artificially enhanced settlements.

24       81.    The Defendants all worked in concert together for the shared purpose of

25   defrauding the Plaintiffs.  In order to achieve this purpose, the Defendants developed

26   relationships with each other and worked in concert over a period of time from at least

27   2006 forward.  In addition, the individuals employed by or associated with each entity

COMPLAINT - 19

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  Defendant participated in performing the predicate acts which constitute the racketeering

2  and fraudulent activity alleged.

3         82.     The Plaintiffs first became aware of the injuries caused by the Defendants'

4  wrongful conduct in Mid-2012.  The Plaintiffs had no actual knowledge of the Defendants'

5  malfeasance and tortious conduct before Mid-2012.   The Plaintiffs could not have

6  discovered, through the use of reasonable diligence, the existence of facts, evidence and

7  circumstances establishing the injuries caused by the wrongful conduct of the Defendants

8  any sooner than this time.  In Mid-2012 the Plaintiffs became aware that the conduct of the

9  Defendants had been ongoing (unbeknownst by the Plaintiffs) from as far back as 2006

10  through at least Mid-2012.

11                             **COUNT ONE**
                 **Racketeer Influenced And Corrupt Organizations Act**
12          **18 U.S.C. § 1962(c) – Conduct of Enterprise Through Racketeering**

13                         **(Against All Defendants)**

14         83.     The Plaintiffs re-allege and restate paragraphs 1 through 82 as if fully set

15  forth herein.

16         84.     The Plaintiffs have standing to seek to recover damages from the

17  Defendants.  In this case, the claimants were mere conduits through which the Defendants

18  herein extracted funds from the Plaintiffs to which they were not entitled.  As a result of

19  the fraudulent billings, referrals, treatment and medical reports which the participants of

20  the enterprise generated and caused to be presented to the Plaintiffs, the claimants received

21  settlements and judgments in amounts/sums to which (in whole or in part) the claimants

22  were not otherwise entitled.  The Defendants knowingly used these individual claimants as

23  the vehicles by which the Defendants fraudulently obtained money from the Plaintiffs to

24  which they were not entitled.

25         85.     At all relevant times, TMT provided massage therapy treatment for

26  numerous claimants involved with personal injury claims against the Plaintiffs.  TMT

27  treated these claimants and knew from inception of the treatment that the best source of

COMPLAINT - 20

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   payment for that treatment would be monies paid by the Plaintiffs in settlement of these

2   claims and/or in satisfaction of any judgment the claimants might obtain.   ANDREW

3   JACOBS, MELANIE JACOBS, and LEMINGS owned and/or controlled TMT.

4         86.   At all relevant times, TRT provided physical therapy treatment for numerous

5   claimants involved with personal injury claims against the Plaintiffs.   TRT treated these

6   claimants and knew from inception of the treatment that the best source of payment for that

7   treatment would be monies paid by the Plaintiffs in settlement of these claims and/or in

8   satisfaction of any judgment the claimants might obtain.   ANDREW JACOBS, MELANIE

9   JACOBS, and LEMINGS owned and/or controlled TRT.

10         87.   At all relevant times, MCLAUGHLIN LAW provided legal services for

11   numerous claimants involved with personal injury claims against the Plaintiffs.

12   MCLAUGHLIN LAW represented these claimants and knew from inception of the

13   representation that the best source of payment for any treatment would be monies paid by

14   the Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the

15   claimants might obtain.   WESLEY MCLAUGHLIN and LEMINGS owned and/or

16   controlled MCLAUGHLIN LAW.

17         88.   At all relevant times, NANDY provided marketing services to TMT, TRT,

18   and MCLAUGHLIN LAW.  LEMINGS owned and/or controlled NANDY.

19         89.   ANDREW JACOBS was and is an individual "person," within the meaning

20   of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the

21   conduct and affairs of the enterprise as described above.  This participation consisted of

22   forming and operating TMT and TRT as various components of the enterprises, and the

23   combined parts of them, through the illegal corporate practice of medicine, the improper

24   kickbacks to physicians an chiropractors in exchange for patient referrals, the illegal

25   referral of patients to lawyers in exchange for monetary kickbacks and the fraudulent

26   massage therapy and physical therapy treatment, and ancillary services and billings

27   described in greater detail above.

COMPLAINT - 21

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    90.    MELANIE JACOBS was and is an individual "person," within the meaning

2  of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the

3  conduct and affairs of the enterprise as described above.  This participation consisted of

4  forming and operating TMT and TRT as various components of the enterprises, and the

5  combined parts of them, through the illegal corporate practice of medicine the improper

6  kickbacks to physicians an chiropractors in exchange for patient referrals, the illegal

7  referral of patients to lawyers in exchange for monetary kickbacks and the fraudulent

8  massage therapy and physical therapy treatment, and ancillary services and billings

9  described in greater detail above.

10    91.    LEMINGS was and is an individual "person," within the meaning of 18

11  U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the conduct and

12  affairs of the enterprise as described above.  This participation consisted of operating

13  TMT, TRT, NANDY, and MCLAUGHLIN LAW as various components of the

14  enterprises, and the combined parts of them, through the illegal corporate practice of

15  medicine, the improper kickbacks to physicians an chiropractors in exchange for patient

16  referrals, the illegal referral of patients to lawyers in exchange for monetary kickbacks and

17  the fraudulent massage therapy and physical therapy treatment, and ancillary services and

18  billings described in greater detail above.

19    92.    WESLEY MCLAUGHLIN was and is an individual "person," within the

20  meaning of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in

21  the conduct and affairs of the enterprise as described above.  This participation consisted of

22  operating MCLAUGHLIN LAW as various components of the enterprises, and the

23  combined parts of them, through the illegal referral of patients to MCLAUGHLIN LAW in

24  exchange for monetary kickbacks, and the misuse of fraudulent massage therapy and

25  physical therapy treatment, and ancillary services and billings described in greater detail

26  above.

27    93.    TMT is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c)

COMPLAINT - 22

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  who associated with and/or participated in the conduct of the affairs of the enterprise as

2  described above.   This participation consisted of forming and operating the various

3  components of the enterprise and the combined parts of them, through the illegal treatment of

4  patients, improper solicitation of patients, improper kickbacks to chiropractors and physicians,

5  the referral of the patients to lawyers for monetary kickbacks and the submission of fraudulent

6  therapy services and billings described in greater detail above.

7       94.    TRT is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c)

8  who associated with and/or participated in the conduct of the affairs of the enterprise as

9  described above.   This participation consisted of forming and operating the various

10 components of the enterprise and the combined parts of them, through the illegal treatment of

11 patients, improper solicitation of patients, improper kickbacks to chiropractors and physicians,

12 the referral of the patients to lawyers for monetary kickbacks and the submission of fraudulent

13 therapy services and billings described in greater detail above.

14      95.    NANDY is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c)

15 who associated with and/or participated in the conduct of the affairs of the enterprise as

16 described above.   This participation consisted of forming and operating the various

17 components of the enterprise and the combined parts of them through the improper

18 solicitation of patients, the improper payment of kickbacks for the referral of patients, and the

19 knowing submission of fraudulent billings generated by the enterprise, specifically AIM, as

20 discussed more fully above.

21      96.    MCLAUGHLIN LAW is a "person" within the meaning of 18 U.S.C.

22 §§1961(3) and 1962(c) who associated with and/or participated in the conduct of the affairs of

23 the enterprise as described above.   This participation consisted of forming and operating the

24 various components of the enterprise and the combined parts of them through the improper

25 solicitation of patients, the improper payment of kickbacks for the referral of patients to

26 lawyers over whom it exerted control, the unauthorized practice of the law and the knowing

27 submission of fraudulent billings generated by the enterprise as discussed more fully above.

COMPLAINT - 23

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

97.     The combination of TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN constituted an "association in fact" enterprise within the meaning of 18 U.S.C. §1961(4).   These Defendants all worked in concert together for the shared purpose of defrauding the Plaintiffs.   In order to achieve this purpose, these Defendants developed relationships with each other and worked in concert over a period of time from at least 2006 forward.   In addition, the individuals employed by or associated with each entity Defendant, joined and became part of the association in fact enterprise by combining with the entities with whom they were not employed, and with the individuals employed by those entities, in performing the predicate acts which constitute the racketeering activity alleged above and below.

98.     With regard to the actual treatment of TMT and TRT patients, the Defendants were instrumental in carrying out the fraudulent scheme of the enterprise.  At all relevant times TMT and TRT were operating as illegal entities because as they were engaging in the corporate practice of medicine in violation of the Washington Professional Services Corporation Act, RCW 18.100*, et seq.*  As such, the Defendants and each of them, knew that TMT/TRT were operating as illegal entities and yet the Defendants submitted bills to Plaintiffs that were illegal, unreasonable and unnecessary.  Further, the treatment which TMT and TRT provided was based upon a standardized pattern developed by the enterprise participants with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually healing injuries.

99.     Under the auspices of purportedly legitimate professional corporations, the structures were in place for ANDREW JACOBS, MELANIE JACOBS, and LEMINGS to conduct the enterprise's illicit referral schemes and for the enterprise to benefit from the income being realized by TMT, TRT and MCLAUGHLIN LAW.

COMPLAINT - 24

**McCormick, Barstow, Sheppard, Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

100.   At all relevant times, TMT and TRT provided treatment, care and referrals for numerous claimants involved with personal injury claims against the Plaintiffs. ANDREW JACOBS and MELANIE JACOBS owned and/or controlled TMT and TRT. Others employed by TMT and TRT saw claimants, generated written reports, made referrals and created bills for the professional services rendered at TMT and TRT at the direction of ANDREW JACOBS and LEMINGS.

101.   Between 2006 through the present, TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN conducted, participated in, engaged in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(5) and 1962(c).

102.   TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN, either directly or through employees, committed predicate acts of mail fraud and wire fraud within the meaning of 18 U.S.C. §§1341, 1343 and 1961(1).  These acts consisted of making false and misleading statements, or statements made as an artifice or scheme to defraud, in written medical records and associated billing records relating to services, diagnoses, tests, and treatments that either were rendered from an illegal entity, medically unnecessary or at a minimum were greatly exaggerated or embellished, for the specific intent and purpose of supporting inflated and fraudulent settlement demands in personal injury cases for which these services were performed.

103.   Upon referrals of those patients, MCLAUGHLIN LAW, WESLEY MCLAUGHLIN and LEMINGS would then knowingly take advantage of TRT's and TMT's inflated billing statements to negotiate artificially enhanced settlements – all in an effort to perpetrate a fraud on insurance companies, including Allstate.

104.   The separate acts of mail and wire fraud are numerous, but consist, at a minimum, of at least two hundred (200) (See list of claimants in Exhibit A) separate

COMPLAINT - 25

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   mailings and/or wire transmissions of information included within medical records,

2   diagnoses, and/or treatments to attorneys retained by claimants and or Plaintiffs themselves

3   for the purposes of carrying out the enterprise's fraudulent scheme.  The predicate acts

4   further consist of mailings and or wire transmissions of fraudulent information to Plaintiffs

5   designed to enhance the value of the claimants' cases for the purposes of supporting those

6   claimants' artificially enhanced settlement demands.

7       105.   Every act of falsehood or item containing misleading information in such

8   transmissions, facilitated through the use of the United States Mail or wire transmissions,

9   constitutes a separate act of mail and/or wire fraud and hence a separate predicate act

10  within the meaning of RICO and cases interpreting RICO as well as the mail fraud

11  provisions of 18 U.S.C. §1341, and wire fraud provisions of 18 U.S.C. §1343, which are

12  both recognized predicate acts of racketeering activity under 18 U.S.C. §1961(1) and (4).

13      106.   From in or about 2006 through the present, the Defendants knowingly and

14  willfully, and with intent to defraud, devised a scheme to defraud certain entities, including

15  the Plaintiffs, by obtaining money from these entities through false and fraudulent pretenses

16  and representations.  These acts all occurred after the effective date of the RICO Act and

17  more than two such acts occurred within ten years of one another.

18      107.   The Plaintiffs became aware of the injury caused by the Defendants' pattern

19  of racketeering activity in Mid-2012.  The Plaintiffs could not have discovered, through the

20  use of reasonable diligence, the injury caused by the predicate acts of racketeering activity

21  any sooner than this time.  Prior to Mid-2012, the Plaintiffs were unaware of the fraudulent

22  conduct and activity of the Defendants.  Up until that point, it was reasonable, proper and

23  appropriate for the Plaintiffs to rely upon the documents the Plaintiffs received in

24  evaluating and ultimately settling the claims of those individuals set forth in Exhibit A.

25      108.   At all relevant times, the enterprise alleged above was engaged in, and its

26  activities affected, interstate commerce.  Not only were the Defendants aware that their

27  activities would have an effect on interstate commerce, but, more importantly, many of the

COMPLAINT - 26

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    fraudulent and false representations at issue were actually transmitted by wire and or sent

2    through the mail across state lines.

3         109.   All of the predicate acts described in this Complaint were related and

4    establish a pattern of racketeering activity, within the meaning of 18 U.S.C. §1962(c), in

5    that their common purpose, and their common result, was to defraud the Plaintiffs of

6    money.   The Plaintiffs were the victim of the acts of racketeering; and/or the acts of

7    racketeering were otherwise interrelated by distinguishing characteristics and were not

8    isolated events.

9         110.   All of the predicate acts described within this Complaint were continuous so

10   as to form a pattern of racketeering activity in that "persons" participating in the enterprise

11   engaged in the predicate acts over a substantial period of time or in that such predicate acts

12   had become part of the enterprise participants' regular way of conducting business and said

13   business practices would have continued indefinitely into the future but for this lawsuit.

14        111.   At all times, the Plaintiffs were the reasonably foreseeable and/or anticipated

15   victims of the Defendants' scheme and the Plaintiffs were the target or victim of the

16   fraudulent scheme to have the Plaintiffs pay damages or settlements based on TMT's and

17   TRT's fraudulent medical reports and billings.   The Defendants reasonably knew that the

18   Plaintiffs would have a legal obligation to negotiate in good faith and make reasonable

19   attempts to settle the underlying claims.   As such, it was reasonably foreseeable and

20   anticipated that the Plaintiffs would rely on the conduct, documents and other information

21   provided by the Defendants in evaluating the respective cases and, ultimately, entering into

22   settlements.

23        112.   The Plaintiffs were directly injured by TMT, TRT, ANDREW JACOBS,

24   MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY

25   MCLAUGHLIN's fraudulent conduct, since the Plaintiffs paid settlements and judgments

26   that were based, at least in part, on inflated and illegal medical bills, illegal referrals, and

27   procedures that were not medical necessary.

COMPLAINT - 27

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

113.   As a direct and proximate result of, and by reason of, the activities of TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN and their conduct in violation of 18 U.S.C. §1962(c), the Plaintiffs have been injured in their business or property, within the meaning of 18 U.S.C. §1964(c)

114.   Among other things, the Plaintiffs have suffered damages to the extent they paid for settlements or judgments of TMT and TRT patients on the basis of illegal and fraudulently inflated billings.  The Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit including costs, reasonable attorneys' fees and reasonable experts' fees.

**COUNT TWO**
**Racketeer Influenced And Corrupt Organizations Act**
**18 U.S.C. §1962(d) – Conspiracy**

**(Against All Defendants)**

115.   The Plaintiffs re-allege and restate paragraphs 1 through 114 as if fully set forth herein.

116.   Upon Plaintiffs' information and belief, TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN, and each of them, conspired together to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise described within this Complaint through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).  In particular, the Defendants intended to further an endeavor which, if completed, would satisfy all of the elements of a fraudulent scheme to extract excessive settlement monies from insurers, including the Plaintiffs.  Further, the Defendants agreed to use the U.S. Mail and/or wire services such as telephone, facsimile or email to carry out their fraudulent scheme.

117.   From in or about 2006 through the present, the Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud insurance companies, including the Plaintiffs, by obtaining money from these insurance companies through false

COMPLAINT - 28

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   and fraudulent pretenses and representations as detailed above.

2       118.   The Plaintiffs were injured by the co-conspirators' overt acts that are acts of

3   racketeering or otherwise unlawful under the RICO Act, which included (among other acts)

4   acts of mail and wire fraud.

5       119.   As a direct and proximate result of, and by reason of, the activities of the co-

6   conspirators of the enterprise, and the conspiracy alleged herein, the Plaintiffs have been

7   injured in its business or property, within the meaning of 18 U.S.C. §1964(c).

8       120.   The Plaintiffs have suffered damages to the extent the co-conspirators and/or

9   each of them, received money from settlements or judgments paid by the Plaintiffs on the

10   basis of TMT's and TRT's illegal, fraudulent and inflated billings.   The Plaintiffs have

11   additionally suffered further damages to the extent the Plaintiffs had to settle, for grossly

12   inflated amounts, claims with first party claimants who had pending personal injury claims

13   with the Plaintiffs, directly, or claims of third party claimants against the Plaintiffs' insureds.

14   The Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained

15   together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable

16   experts' fees.

17   **COUNT THREE**
**Washington State RICO Violations – RCW 9A.82.100, et seq.**

18   **(Against All Defendants)**

19       121.   The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through

20   120 of the Complaint as if fully set forth herein.

21       122.   Each of the fraudulent claims described above demonstrate that the

22   Defendants committed: (1) trafficking in insurance claims as defined in RCW 48.30A; (2)

23   unlicensed practice of a profession or business as defined in RCW 18.130.190(7); (3)

24   health care false claims as defined in RCW 48.80.030; and (4) leading organized crime as

25   defined in RCW 9A.82.060.

26       123.   The Defendants worked in concert to make false and fraudulent

27   representations, reports, bills and referrals in support of excessive, medically unreasonable

COMPLAINT - 29

**McCormick, Barstow, Sheppard,
Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   and inflated claims with the intent to obtain and did, in fact, obtain insurance proceeds that

2   the Defendants knew they had no right to receive.

3       124.   The Plaintiffs justifiably and reasonably relied upon these misleading

4   documents and misrepresentations to their detriment in evaluating, assessing and paying

5   insurance claims and claims-related expenses.

6       125.   As set forth above, TMT, TRT, ANDREW JACOBS, MELANIE JACOBS,

7   NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN together

8   constitute an association in fact enterprise separate and distinct from each Defendant.

9   TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS,

10  MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN conducted and participated in the

11  affairs of said enterprise through a pattern of racketeering activity.

12      126.   The Defendants conducted the affairs of the foregoing enterprise through

13  racketeering activity as identified above.

14      127.   The Defendants associated with the enterprise and participated directly or

15  indirectly in the conduct of the enterprise through racketeering activity as identified above.

16      128.   The predicate acts committed by the Defendants were not isolated, but

17  related by similar pattern, intent, result, accomplices, victim and method of commission.

18      129.   The Plaintiffs have been injured in its business and property by reason of the

19  Defendants' misconduct.

20      130.   By virtue of the Defendants' violations, the Plaintiffs are entitled to recover

21  from each Defendant identified three times the damages sustained by reason of the claims

22  submitted by the Defendants, and others acting in concert with them, together with the

23  costs of suit including reasonable attorneys' fees and investigative costs.

24      131.   The Plaintiffs demand judgment against the Defendants as follows: actual

25  and consequential damages to be established at trial; treble damages, interest, costs and

26  reasonable attorneys' fees; investigative costs; and injunctive relief enjoining the

27  Defendants from engaging in the wrongful activities alleged in the Complaint as the Court

COMPLAINT - 30

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1  deems just.

2                              **COUNT FOUR**
                    **Fraud And Intentional Misrepresentation**
3                          **(Against All Defendants)**

4       132.   The Plaintiffs re-allege and restate paragraphs 1 through 131 as if fully set

5  forth herein.

6       133.   At all times herein relevant, the Defendants knowingly communicated to the

7  Plaintiffs false representations of material fact in their reports, records, referrals and

8  billings, all coming from illegal entities. The Defendants engaged in numerous

9  misrepresentations pursuant to the scheme, set forth with particularity above in this

10 Complaint.  This includes, but is not limited to numerous evaluations and treatment

11 reports, referrals and billing records of TMT and TRT containing statements of services

12 that were not rendered, were  grossly exaggerated, and misrepresentations that services

13 were medically necessary or called for by the condition presented by the claimants.

14      134.   At all times herein relevant, the Defendants knew and intended that others,

15 such as insurance companies like the Plaintiffs, would rely on their misrepresentations in

16 evaluating pending claims against the Plaintiffs' insureds or by the Plaintiffs' insureds

17 themselves.  The Defendants made these misrepresentations with knowledge of their

18 falsity or at minimum in reckless disregard for their truth.  The Defendants knew that

19 numerous referrals were excessive, illegal, and not medically necessary.  Further, the

20 Defendants were aware that the diagnoses provided were not accurate and were not

21 supportable by the medical evidence present.  The Defendants acted to aggrandize

22 themselves financially by submitting bills from illegal entities and also inflating the

23 medical bills knowing that settlement decisions are made in material part on the extent of

24 medical treatment and cost.

25      135.   From in or about 2006 through the present, the Defendants knowingly and

26 willfully, and with intent to defraud, devised a scheme to defraud certain entities, including

27 the Plaintiffs, by obtaining money from these entities through false and fraudulent

COMPLAINT - 31

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    pretenses and representations.

2        136.   In making the above-described misrepresentations, the Defendants intended

3    to defraud the Plaintiffs and to induce the Plaintiffs' reliance.  The Defendants were aware

4    that the claimants each had litigated claims for which insurance would be the likely source

5    of recovery.  The Defendants further were aware that the professional services being

6    provided by them would be paid from the proceeds of any settlement or judgment paid by

7    the Plaintiffs.   The Defendants' reports, referrals and bills each included medically

8    unnecessary services in these claims, all of which would be used to form the basis for a

9    monetary settlement and/or payment.

10       137.   At all times herein relevant, the Plaintiffs reasonably and justifiably relied, to

11   its detriment, on the misrepresentations made by the Defendants.  The Plaintiffs have a

12   legal obligation to protect the interests of its insureds and pay reasonable bills, judgments

13   and/or settlements of claims involving their insureds.  Thus, the Plaintiffs were legally

14   bound to pay money, pursuant to their policies with their insureds, to resolve claims caused

15   by the negligence of the Plaintiffs' insureds or others who injured the Plaintiffs' insureds.

16   Because of the Defendants' fraudulent conduct, the Plaintiffs greatly overvalued and thus,

17   overpaid, for the settlements of over two hundred (200) claims.

18       138.   The above-described actions of the Defendants that constituted violations of

19   RCW 18.100, *et seq*. and RCW 19.68, *et seq*. were material to the Plaintiffs' reliance upon

20   the misrepresentations of the Defendants.

21       139.   The Defendants' misrepresentations proximately caused damages to the

22   Plaintiffs.   As a direct and proximate result of the Defendants' fraud and intentional

23   misrepresentations, the Plaintiffs have suffered damages.

24       140.   Further, the conduct of the Defendants, as described within this Complaint

25   was willful, malicious, and done with a conscious and reckless disregard to the Plaintiffs

26   and with the purpose of fraudulently obtaining money from the Plaintiffs through dishonest

27   and untruthful billings, reports, records and referrals.

COMPLAINT - 32

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

**COUNT FIVE**
**Conspiracy To Defraud**

**(Against All Defendants)**

141.   The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 140 of the Complaint as if fully set forth herein.

142.   At all times herein relevant, the Defendants consist of two or more persons or business entities who, had a shared objective to be accomplished, had a meeting of the minds on how to achieve their objective, committed one or more unlawful or overt acts in furtherance of that objective, and this conspiracy resulted in damages to the Plaintiffs.

143.   All of the Defendants, jointly and individually, had an agreement whereby they each knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and otherwise further a scheme to defraud the Plaintiffs through the illegal entities of TMT/TRT.  The objective of this conspiracy was to generate as many fees as possible, all of which would be paid by the Plaintiffs as part of any settlement or satisfaction of a judgment concerning the involved patients.

144.   These co-conspirators engaged in numerous wrongful acts pursuant to their agreement to defraud insurers such as the Plaintiffs as set forth with particularity above in this Complaint.

145.   From in or about 2006 through the present, the Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud insurance companies, including the Plaintiffs, by obtaining money from these insurance companies through false and fraudulent pretenses and representations.

146.   The above-described actions of the Defendants that constituted violations of RCW 18.100, *et seq*. and RCW 19.68, *et seq*. were material to the Plaintiffs' reliance upon the misrepresentations of the Defendants.

147.   As a direct and proximate result of the herein alleged conspiracy to defraud the Plaintiffs, the Plaintiffs have suffered damages.

148.   Further, the conduct of the Defendants, as described within this Complaint

COMPLAINT - 33

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   was willful, malicious, and done with a reckless disregard to the Plaintiffs and with the

2   express purpose of obtaining money from the Plaintiffs through fraudulent billings, reports,

3   records and referrals.

**COUNT SIX**

4   **Violation of the Washington Consumer Protection Act, RCW 19.86, et seq.**

5   **(Against All Defendants)**

6   149.   The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through

7   148 of the Complaint as if fully set forth herein.

8   150.   The Defendants engaged in unfair and deceptive acts occurring in trade or

9   commerce as it pertained to billing insurance companies for alleged health care services,

10   illegal ownership and control, predetermined care, rebating for health care services, and

11   operation of illegal health care facilities. The Defendants' acts constitute a violation of the

12   Washington Consumer Protection Act, RCW 19.86, et seq.

13   151.   The unfair and deceptive acts of the Defendants affect the public interest. For

14   example, the Defendants deprived otherwise legitimate physical therapy and massage

15   therapy clinics the ability to legally participate in the marketplace and to reasonably treat

16   those patients TMT/TRT purportedly treated.  Moreover, numerous insurance companies

17   in Washington have paid money on illegitimate claims stemming from TMT/TRT, thus

18   impacting the public (its insureds).

19   152.   The unfair and deceptive acts of the Defendants were the direct and

20   proximate cause of damages to the Plaintiffs' business and/or property.

21   153.   The unfair and deceptive acts of the Defendants have injured other persons.

22   For example, the Defendants deprived otherwise legitimate physical therapy and massage

23   therapy clinics the ability to legally participate in the marketplace and to reasonably treat

24   those patients TMT/TRT purportedly treated.  Moreover, numerous insurance companies

25   in Washington have paid money on illegitimate claims stemming from TMT/TRT, thus

26   impacting the public (its insureds).

27   154.   The unfair and deceptive acts of the Defendants had and continue to have the

COMPLAINT - 34

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1    capacity to injure other persons. For example, the Defendants are currently depriving

2    otherwise legitimate physical therapy and massage therapy clinics the ability to legally

3    participate in the marketplace and to reasonably treat those patients TMT/TRT purportedly

4    treated.  Moreover, numerous insurance companies in Washington are continuing to pay

5    money on illegitimate claims stemming from TMT/TRT, thus impacting the public (its

6    insureds).

7         155.    The above-described actions of the Defendants that constituted violations of

8    RCW 18.100, *et seq*. and RCW 19.68, *et seq*. were material to the unfair and deceptive acts

9    of the Defendants.

10        156.    The damages to the Plaintiffs include, but are not limited to, payments it

11   made to the Defendants, payments to others, treble damages pursuant to statute, the

12   Plaintiffs' investigative attorney fees and costs, and all other expenses.  The specific

13   amount of damage suffered by the Plaintiffs will be proven at trial.

### COUNT SEVEN
### Constructive Trust and Unjust Enrichment
### (Against All Defendants)

16        157.    The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through

17   156 of the Complaint as if fully set forth herein.

18        158.    At all relevant times, the Defendants fraudulently obtained money in the

19   form of insurance payments and settlement proceeds from the Plaintiffs under such

20   circumstances that, in equity, such money should be returned.

21        159.    At all relevant times, the Defendants had a relationship with the Plaintiffs

22   that required the Defendants to be properly authorized and licensed to provide medical care

23   and treat claimants, honestly treat the claimants, honestly and accurately report on the

24   medical condition of these claimants, and to honestly and accurately submit billings for

25   said treatment and care.

26        160.    The Defendants understood that these bills and reports would form the basis

27   of Plaintiffs' evaluation of these claims, assessment of the value of each claim, and the

COMPLAINT - 35

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   amounts to be paid to settle these claims against or by the Plaintiffs' insureds.

2       161.   By paying then Defendants money to which they had no legitimate right, the

3   Plaintiffs conferred a benefit on the Defendants, about which the Defendants are aware and

4   to which the Defendants were not truly, legally, and/or legitimately entitled.

5       162.   The money received by the Defendants from the Plaintiffs, to which the

6   Defendants were not entitled, have unjustly enriched the Defendants at the expense of the

7   Plaintiffs.

8       163.   By the conduct of the Defendants in order to fraudulently obtain insurance

9   proceeds by false pretenses, it would inequitable for Defendants to retain the benefit of the

10   payments made by the Plaintiffs.

11       164.   The Plaintiffs demand judgment against the Defendants individually, jointly,

12   and separately and that this Court impose a constructive trust upon the Defendants in an

13   amount representing those funds received by the Defendants from the Plaintiffs.

14   **PRAYER FOR RELIEF**

15       1.   That the Plaintiffs be awarded a judgment in their favor for each of the

16   Counts set forth in this Complaint;

17       2.   For damages consisting of, but not limited to, the following:

18           a.   Actual and consequential damages, including economic, general and

19   special damages, caused by the Defendants' conduct as alleged herein;

20           b.   Treble damages as permitted by the Federal RICO Act;

21           c.   Treble damages as permitted by the Washington Profiteering Act;

22           d.   Treble damages as permitted by the Washington CPA;

23           c.   Attorney's fees and all costs, including all pre-litigation

24   investigation expenses and expert expenses, incurred by the Plaintiffs as a result of the

25   Defendants' conduct as permitted by both Federal and Washington state law both before

26   and after the filing of this Complaint;

27           d.   For Judgment that the Defendants disgorge to the Plaintiffs all

COMPLAINT - 36

**McCormick, Barstow, Sheppard,**
**Wayte & Carruth LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720

1   amounts received by the Defendants from the Plaintiffs.

2       3.      For Judgment in favor of the Plaintiffs for damages arising from the billing

3   of unreasonable, unnecessary, and illegal healthcare services by the Defendants.

4       4.      For a Constructive Trust over the Defendants for damages arising from the

5   billing of unreasonable, unnecessary, and illegal healthcare services by the Defendants.

6       5.      For pre-judgment and post-judgment interest as allowed by law;

7       6.      For joint and several liability against all Defendants under all causes of

8   action pled above; and

9       7.      That Plaintiffs be awarded such other and further relief as the Court deem

10  just and proper.

11  DATED: March 21, 2013                McCORMICK, BARSTOW, SHEPPARD,
                                         WAYTE & CARRUTH LLP
12

13                                       By:  s/ Eron Z. Cannon
                                         By:  s/ Michael J. Schmidt
14

15                                       Eron Z. Cannon, WSBA 42706
                                         eron.cannon@mccormickbarstow.com
16                                       Michael J. Schmidt, WSBA 43582
                                         michael.schmidt@mccormickbarstow.com
17                                       800 5th Avenue, Suite 4100
                                         Seattle, Washington 98104
18                                       Phone (206) 576-3700
                                         Fax (206) 576-3720
19

20                                       Attorneys for Plaintiffs, ALLSTATE
                                         INSURANCE COMPANY, ALLSTATE
21                                       PROPERTY & CASUALTY
                                         INSURANCE COMPANY, ALLSTATE
22                                       INDEMNITY COMPANY, and
                                         ALLSTATE FIRE & CASUALTY
23                                       INSURANCE COMPANY

24

25

26

27

COMPLAINT - 37

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700
Fax (206) 576-3720