UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, | Case No. 3:13-CV-05214 |
| | **FIRST AMENDED COMPLAINT** |
| | |
| Plaintiffs, | **JURY DEMAND** |
| v. | |
| TACOMA THERAPY, INC., TACOMA REHABILITATION THERAPY, INC., P.S., ANDREW JACOBS, MELANIE JACOBS, NANDY, INC., NATHAN LEMINGS and JANE DOE LEMINGS, husband and wife, and the marital property thereof, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC., WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN, husband and wife, and the marital property thereof, DIRECT SOLUTIONS MARKETING, INC., and DOES 1-100 and ROES 101-200, | |
| Defendants. | |

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

## FIRST AMENDED COMPLAINT FOR DAMAGES

## AND DEMAND FOR JURY TRIAL

Plaintiffs, ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, (hereinafter collectively referred to as "Plaintiffs" or "Allstate"), by and through their attorneys of record of the law firm McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP, hereby submit the following Complaint for Damages against Defendants, TACOMA THERAPY, INC., TACOMA REHABILITATION THERAPY, INC., P.S., ANDREW JACOBS, MELANIE JACOBS, NANDY, INC., NATHAN LEMINGS and JANE DOE LEMINGS, husband and wife, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC., WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN, husband and wife, and DIRECT SOLUTIONS MARKETING, INC., DOES 1-100 and ROES 101-200 as more fully set forth below.

## DEMAND FOR JURY TRIAL

1. Plaintiffs hereby demand a trial by jury on all issues, counts, claims and allegations contained within this Complaint or to be pleaded in the future, if necessary.

## JURISDICTION AND VENUE

2. This action is brought under the federal Racketeer Influenced and Corrupt Organization Act ("RICO Act"), 18 U.S.C. §1961, *et seq.*, and various other Washington common law doctrines and/or statutes. Jurisdiction is vested in this Court by virtue of 17 U.S.C. §501(b) and 28 U.S.C. §1331. Plaintiffs' claims brought under Washington law are so related to Plaintiffs' Federal claims, over which this Court has original jurisdiction, that they form part of the same case or controversy. Under Article III of the United States Constitution, the Court has supplemental jurisdiction over Plaintiffs' Washington common law and/or statutory claims pursuant to 28 U.S.C. §1367.

FIRST AMENDED
COMPLAINT - 2
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

3.     This Court further and alternatively has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) based upon diversity of citizenship. Plaintiffs are citizens and residents of the State of Illinois. Defendants are or were citizens and residents of the State of Washington at all times material hereto, and have their principal places of business in the State of Washington. The amount in controversy exceeds $75,000 exclusive of interest and costs.

4.     A substantial part of the acts and omissions giving rise to the claims stated herein occurred in this District (within the cities of Tacoma and Puyallup, in the state of Washington) and Defendants are found in this District or previously resided within. Venue is proper in this District and this Division pursuant to 28 U.S.C. §§1391(b)(2) and (3) and pursuant to 18 U.S.C. §1965(b).

## PARTIES TO THIS LITIGATION

5.     Plaintiff, ALLSTATE INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

6.     Plaintiff, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

7.     Plaintiff, ALLSTATE INDEMNITY COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

8.     Plaintiff, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

9.     Defendant, TACOMA THERAPY, INC. (also known as Tacoma Massage Therapy, hereinafter "TMT"), is and at all relevant times was, a corporation organized under the laws of the State of Washington, with locations in, Tacoma, WA, and Puyallup,

FIRST AMENDED
COMPLAINT - 3
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  WA. Plaintiffs further allege that at all relevant times Defendants ANDREW JACOBS

2  and MELANIE JACOBS maintained ownership and/or control over, and/or managed TMT

3  and that they were controlling officers of TMT. Plaintiffs are further informed and believe

4  that at all times relevant herein, ANDREW JACOBS and MELANIE JACOBS derived a

5  monetary profit from or had a financial interest in TMT. Plaintiffs are further informed

6  and believe that ANDREW JACOBS and MELANIE JACOBS sold their interest in TMT

7  in or around September 2012.

8      10.    Defendant, TACOMA REHABILITATION THERAPY, INC., P.S.,

9  formerly operating as Tacoma Rehabilitation Therapy, Inc., (hereinafter "TRT"), is, and at

10  all relevant times was, a corporation organized under the laws of the State of Washington,

11  with locations in Tacoma, WA, and Puyallup, WA. Plaintiffs further allege that at all

12  relevant times Defendants ANDREW JACOBS and MELANIE JACOBS maintained

13  ownership and/or control over, and/or managed TRT and that they were controlling

14  officers of TRT. Plaintiffs are further informed and believe that at all times relevant

15  herein, ANDREW JACOBS and MELANIE JACOBS derived a monetary profit from or

16  had a financial interest in TRT. Plaintiffs are further informed and believe that ANDREW

17  JACOBS and MELANIE JACOBS sold their interest in TRT in around September 2012.

18      11.    Defendant, ANDREW JACOBS, is a competent adult, and at all relevant

19  times, was a resident of the State of Washington. ANDREW JACOBS at all relevant times

20  was a managerial employee and/or agent of the other defendants. ANDREW JACOBS

21  participated in each of the wrongful acts, omissions and conduct described below and/or

22  had actual and/or constructive notice of the wrongful acts, omissions and conduct

23  perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, ANDREW

24  JACOBS had both the authority and duty to prevent and correct the same, and by his

25  conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct

26  described herein.

27      12.    Defendant, MELANIE JACOBS, is a competent adult, and at all relevant

FIRST AMENDED
COMPLAINT - 4
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1    times, was a resident of the State of Washington. MELANIE JACOBS at all relevant
2    times was a managerial employee and/or agent of the other defendants. MELANIE
3    JACOBS participated in each of the wrongful acts, omissions and conduct described below
4    and/or had actual and/or constructive notice of the wrongful acts, omissions and conduct
5    perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, MELANIE
6    JACOBS had both the authority and duty to prevent and correct the same, and by her
7    conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct
8    described herein.

9        13.    Defendants ANDREW JACOBS and MELANIE JACOBS are husband and
10   wife and form a marital community under the laws of the State of Washington. All acts by
11   either were done on behalf of and in furtherance of their marital community.

12       14.    Defendant, NANDY, INC. (hereinafter "NANDY"), at all relevant times
13   was a corporation organized under the laws of the State of Washington. Plaintiffs further
14   allege that Defendant NATHAN LEMINGS at all relevant times maintained ownership
15   and/or control over, and/or managed NANDY and that he is the controlling officer of
16   NANDY. Plaintiffs are further informed and believe that at all times relevant herein,
17   Defendant NATHAN LEMINGS derived a monetary profit from or had a financial interest
18   in NANDY.

19       15.    Defendant, NATHAN LEMINGS (hereinafter "LEMINGS"), is a
20   competent adult, and a resident of the State of Washington. LEMINGS is, and at all
21   relevant times was, a managerial employee and/or agent of the other defendants.
22   LEMINGS participated in each of the wrongful acts, omissions and conduct described
23   below and/or had actual and/or constructive notice of the wrongful acts, omissions and
24   conduct perpetrated upon Plaintiffs, as set forth below. At all times relevant herein,
25   LEMINGS had both the authority and duty to prevent and correct the same, and by his
26   conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct
27   described herein.

FIRST AMENDED
COMPLAINT - 5
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1      16.    Defendant LEMINGS is believed to be a married person. Defendants

2  LEMINGS and JANE DOE LEMINGS are and were at all material times husband and

3  wife and form a marital community under the laws of the State of Washington. All acts by

4  either were done on behalf of and in furtherance of their marital community. The true first

5  name of JANE DOE LEMINGS is not known at this time and so she is sued under the

6  fictional name JANE DOE LEMINGS.

7      17.    Defendant, LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC.

8  (hereinafter "MCLAUGHLIN LAW"), is, and at all relevant times was, a corporation

9  organized under the laws of the State of Washington, with an office in Tacoma, WA.

10 Plaintiffs further allege that Defendant WESLEY MCLAUGHLIN at all relevant times

11 maintained ownership and/or control over, and/or managed MCLAUGHLIN LAW and

12 that he is a controlling officer of MCLAUGHLIN LAW. Plaintiffs are further informed

13 and believe that at all times relevant herein, WESLEY MCLAUGHLIN derived a

14 monetary profit from or had a financial interest in MCLAUGHLIN LAW. Plaintiffs

15 further allege that Defendant ANDREW JACOBS at all relevant times maintained

16 ownership and/or control over, MCLAUGHLIN LAW. Plaintiffs are further informed and

17 believe that at all times relevant herein, ANDREW JACOBS derived a monetary profit

18 from or had a financial interest in MCLAUGHLIN LAW.

19     18.    Defendant, WESLEY MCLAUGHLIN, is a competent adult, and a resident

20 of the State of Washington. WESLEY MCLAUGHLIN is, and at all relevant times was, a

21 managerial employee and/or agent of the other defendants. WESLEY MCLAUGHLIN

22 participated in each of the wrongful acts, omissions and conduct described below and/or

23 had actual and/or constructive notice of the wrongful acts, omissions and conduct

24 perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, WESLEY

25 MCLAUGHLIN had both the authority and duty to prevent and correct the same, and by

26 his conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct

27 described herein.

FIRST AMENDED
COMPLAINT - 6
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

19.     Defendant WESLEY MCLAUGHLIN is believed to be a married person. Defendants WESLEY MCLAUGHLIN and JANE DOE MCLAUGHLIN are and were at all material times husband and wife and form a marital community under the laws of the State of Washington.  All acts by either were done on behalf of and in furtherance of their marital community.  The true first name of JANE DOE MCLAUGHLIN is not known at this time and so she is sued under the fictional name JANE DOE MCLAUGHLIN.

20.     Defendant DIRECT SOLUTIONS MARKETING, INC., (hereinafter "DSM"), at all relevant times was a corporation organized under the laws of the State of Washington.  Plaintiffs further allege that Defendant ANDREW JACOBS at all relevant times maintained ownership and/or control over, and/or managed DSM and is the controlling officer of DSM.  Plaintiffs are further informed and believe that at all times relevant herein, Defendant ANDREW JACOBS derived a monetary profit from or had a financial interest in DSM.

## ALLEGED CO-CONSPIRATORS

21.     The Plaintiffs are informed and believe that there are various physicians, chiropractors, attorneys, entities, and other individuals in and around Tacoma and Puyallup that have conspired with the above Defendants to defraud The Plaintiffs.  The Plaintiffs reserve the right to amend their complaint to add said DOE and ROE physicians, chiropractors, attorneys, entities, and other individuals and entities as Defendants in this matter as their identities are ascertained.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

22.     The Plaintiffs re-allege and restate paragraphs 1 through 21 as if fully set forth herein.

23.     This Complaint involves payments that Plaintiffs made to, and/or on behalf of, approximately one hundred seventy-nine (179) claimants who were involved in automobile accidents in the State of Washington.  Such claimants were individuals who either made claims against the Plaintiffs' insureds (third party claimants) or who were

FIRST AMENDED
COMPLAINT - 7
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1    making claims as the Plaintiffs' insureds (first party claimants).

2         24.    Attached to this Complaint as Exhibit A is a list of the specific claimants

3    that the Plaintiffs are claiming, at this time, were either treated or represented by the

4    Defendants and as a consequence of this treatment and/or representation the Plaintiffs

5    sustained substantial monetary damages. Generally, the claimants listed in Exhibit A had

6    interactions with the Defendants between 2006 and the filing of this action. This list of

7    claimants is incorporated herein by reference when reference is made to the underlying

8    claims that form the basis of this litigation.1

9         25.    Each of the claimants involved in the claims identified in Exhibit A,

10   whether third party claims or first party claims, were billed for services (e.g., massage

11   therapy or physical therapy) allegedly provided for their personal injuries by TMT and/or

12   TRT between 2006 and the filing of this action, and received a settlement payment from

13   the Plaintiffs pursuant to insurance policies issued by the Plaintiffs, or the Plaintiffs

14   compensated TMT and TRT directly for invoices charged to the claimants from TMT

15   and/or TRT.

16        26.    The Plaintiffs allege that TMT and TRT, at all relevant times, were

17   operating as illegal entities because they were committing the corporate practice of

18   medicine and in violation of the Washington Professional Services Corporation Act, RCW

19   18.100, et seq. All billing for purported services rendered by and through these illegal

20   entities was therefore illegal and unenforceable.

21        27.    The Plaintiffs allege that the Defendants, and each of them, caused to be

22   presented to the Plaintiffs bills from an illegal entity as well as grossly exaggerated bills

23   for treatment that was either not performed, medically unnecessary and/or inadequately

24   performed on the claimants identified in Exhibit A.

25   _____

     [1] Exhibit A identifies patients by initials, date of loss, Allstate claim number and whether
26   they were represented by McLaughlin at either McLaughlin Law. Patient names have not
     been provided in order protect patient confidentiality. Because a Qualified Protective
27   Order is in place, the patients' full identities have been disclosed to Defendants by way of
     Plaintiffs' FRCP Rule 26 disclosures.

28.     The Plaintiffs further allege that the Defendants prepared and/or caused to be presented to the Plaintiffs, between 2006 and the filing if this action, medical reports and billing records that falsely reported symptoms, complaints and damages for each of the claimants identified in Exhibit A which were either exaggerated or not supported at all by the facts of the accident, that made pre-programmed, unsubstantiated findings and diagnoses and which prescribed treatment plans which were more consistent with creating or exaggerating claims rather than patient-centered and evidence-based treatment of patients' actual clinical conditions.

29.     Upon a claimant presenting at TMT and/or TRT for treatment, the Defendants would begin by requiring the claimants to execute a lien that required payment for the medical services provided to be made out of any settlement or judgment the claimant might obtain. Accordingly, at all times the Defendants knew that the liens for these claimants ultimately would be paid by insurance money through Personal Injury Protection (hereinafter "PIP"), settlement or a judgment in the claimants' favor. Generally, patients of TMT/TRT were not sent copies of actual medical bills for services incurred during their treatment and therefore they did not know the  amount they were being charged for the services and for what services they were being charged.

30.     After rendering their purported treatment to the claimants, TMT/TRT would then submit to the claimants' personal injury attorney, medical records and invoices for massage therapy and physical therapy services purportedly performed. At all times, the Defendants knew that these invoices and medical records would be used to substantiate the claimants' injury claims and that insurers such as the Plaintiffs would eventually receive the invoices and medical records as part of a claim for PIP or in a settlement demand package in the injury case. At all times, the Defendants herein knew that insurers such as the Plaintiffs would receive and rely upon the medical reports and billings to evaluate and determine settlement positions in the injury cases to which they pertained.

31.     Where TMT/TRT would be paid from settlement proceeds, it was the goal

FIRST AMENDED
COMPLAINT - 9
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  of the Defendants to get the medical specials as high as possible by inflating their bills or

2  for billing for services never provided. This was accomplished by providing and billing

3  for unnecessary medical treatment. This conduct was known by the other Defendants to be

4  occurring.

5      32.    Upon settlement of the personal injury claim, or upon the entry of a

6  judgment in the claimant's favor, the claimant's personal injury counsel would receive a

7  payment from an insurance company to fund the settlement or satisfy the judgment.

8      33.    TMT/TRT would enforce its medical lien after the claimants and/or their

9  legal counsel, such as MCLAUGHLIN and MCLAUGHLIN LAW, received these

10 proceeds from the Plaintiffs. Thus, payment for massage therapy and physical therapy

11 services were all based upon PIP payments, settlement or judgment in the underlying

12 claim, with the understanding in every case that insurance money from the Plaintiffs would

13 provide the proceeds.

14     34.    In cases involving first party claims, after rendering their purported care to

15 the claimants, TMT and TRT, at the direction of ANDREW JACOBS and LEMINGS,

16 would then submit medical records and invoices for therapy directly to insurance

17 companies, including the Plaintiffs.

18     35.    At all times, in cases involving first party claims, Defendants TMT and

19 TRT, by and through the direction of ANDREW JACOBS and LEMINGS, knew that

20 insurers such as the Plaintiffs would receive and rely upon the medical records and

21 invoices for therapy to evaluate and determine payments to TRT and TMT in the injury

22 cases to which they pertained.

23     36.    The Plaintiffs in the normal and due course, received and reasonably relied

24 upon the reports and bills from the Defendants. It was foreseeable to the Defendants that

25 this would occur and that the Plaintiffs would rely on this information.

26     37.    Further, the Plaintiffs did reasonably rely upon this documentary

27 information to their detriment in investigating and evaluating claims and determining the

FIRST AMENDED
COMPLAINT - 10
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1   amounts to pay in PIP and settlement of the claims being made by or against the Plaintiffs'

2   insureds.

3       38.     TMT, at all relevant times herein, was in the business of providing massage

4   therapy services.

5       39.     TRT, at all relevant times herein, was in the business of providing physical

6   therapy services.

7       40.     ANDREW JACOBS and MELANIE JACOBS, at all relevant times herein,

8   had a financial interest in both TMT and TRT.

9       41.     ANDREW JACOBS, at all relevant times herein, was a controlling

10  corporate officer and/or director of both TMT and TRT.

11      42.     MELANIE JACOBS, at all relevant times herein, was a controlling

12  corporate officer and/or director of both TMT and TRT.

13      43.     The Plaintiffs are informed and believe, and thereon allege, that ANDREW

14  JACOBS has never been licensed in the State of Washington as a massage practitioner or a

15  physical therapist.

16      44.     The Plaintiffs are informed and believe, and thereon allege, that MELANIE

17  JACOBS has never been licensed in the State of Washington as a physical therapist.

18      45.     MELANIE JACOBS, a licensed massage practitioner in the State of

19  Washington, along with ANDREW JACOBS, formed TMT in 2006 using MELANIE

20  JACOBS' license. ANDREW JACOBS incorporated TMT and became the President and

21  a controlling officer. Thereafter, MELANIE JACOBS assisted ANDREW JACOBS in

22  forming the fraudulent scheme by drafting policies and procedures for TMT/TRT. During

23  the existence of TMT and TRT, MELANIE JACOBS provided virtually no managerial

24  control over the day to day operations and allowed her unlicensed husband, ANDREW

25  JACOBS, to conduct the fraudulent scheme of which they both conceived.

26      46.     In 2008, MELANIE JACOBS and ANDREW JACOBS formed TRT and as

27  its owners and controlling officers, ran an illegal operation, as neither of them have ever

FIRST AMENDED
COMPLAINT - 11
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1   been licensed as physical therapists in the State of Washington.

2       47.    ANDREW JACOBS and MELANIE JACOBS, through their ownership

3 and/or control of TMT and TRT, at all relevant times herein, were in committing the

4 corporate practice of medicine in violation of the Washington Professional Services

5 Corporation Act, RCW 18.100, et seq. As such all bills derived therefrom are illegal,

6 unreasonable and unnecessary.

7       48.    ANDREW JACOBS and MELANIE JACOBS, by and through their

8 ownership and/or control of TMT and TRT, and each of them, allowed employees to

9 provide massage therapy and physical therapy to patients.

10       49.    At all relevant times herein, the massage practitioners at TMT and physical

11 therapists at TRT were properly characterized as employees and not independent

12 contractors.

13       50.    The Washington Department of Labor and Industries (hereinafter "L&I")

14 audited TMT and TRT between the period of April 1, 2010 through March 31, 2011. As a

15 result of that audit, L&I found that TMT and TRT did not pass the requirements of RCW

16 51.08.180 and 51.08.181, as they were improperly characterizing its workers as

17 independent contractors. L&I determined that the workers were in fact "employees" as

18 they, among other things, were not free from the direction and control of TMT/TRT and its

19 owner ANDREW JACOBS.

20       51.    ANDREW JACOBS and MELANIE JACOBS exerted dominion and

21 control over employees by instituting policies and procedures at TMT/TRT which set in

22 motion the fraudulent scheme.

23       52.    ANDREW JACOBS and MELANIE JACOBS together drafted, signed and

24 issued a handbook to its employees entitled Tacoma Therapy, Inc. Office Policy Handbook

25 ("The Handbook"), in which they listed themselves as "owners." The Handbook describes

26 the following policies and procedures:

27      **Marketing**:

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

"The Marketing Director is required to schedule and have lunches with Medical Groups and build relationships so that they will send us referrals. You are expected to make sure that Tacoma Therapy, Inc. stays busy with referrals. Make sure you keep track of which referrals sources are sending us business and thank them."

"Tacoma Therapy Inc. spends a lot of money on marketing to physicians and other referral sources."

**Patient Retention**:

"It is the therapists job to keep up on the referral script from the physicians. This means that you need to make sure the physicians are renewing their prescriptions and the patient is following through with care. In order to get the visits that you feel the patients need you may have to write a report to the referring physician explaining why you think more visits are necessary."

"Therapists need to let the patients know that if they quit getting massages when they are feeling better, they will probably relapse and will have to start the process over."

"You also need to let the patient know that if they do not get the problem fixed now (while insurance is paying for it), they will have to fix it later on their own dime."

"Treatment for a motor vehicle accident should be anywhere from 5 to 8 months. Every patient is different, but we should set our target goal at 41 visits. You may go a little over this and in some cases you may go a little below this target goal. This policy applies for both PIP and 3rd Party claims. With regard to L&I patients, treat them as long as L&I will allow. **If our contracted therapists lose a patient, before they are seen 32 times, the treating therapist is required to write a report explaining in detail why they lost the patient.** That report needs to be given to the owners of Tacoma Therapy, Inc. immediately. At that time, the owners will review the report and will look into the situation further. A meeting between the said therapist and the owners may be called to discuss the situation. We take

FIRST AMENDED
COMPLAINT - 13
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  this extremely serious and want to avoid losing patients. This is probably the most

2  important policy Tacoma Therapy, Inc. has. It is inexcusable to let this go on."

3      53.     Employees at TMT/TRT could be and were fired if they did not meet their

4  minimum quotas as stated in The Handbook. The threat of being fired for not meeting the

5  minimum pre-programmed quotas caused the TMT/TRT employees to treat patients well

6  beyond what was reasonable and necessary. Examples of these excessive visits include,

7  but are not limited to, the claims of D.R. (47 visits to TMT - See Exhibit A, Line 144);

8  R.S.H. (49 visits to TMT – See Exhibit A, Line 151), P.W. (54 visits to TMT, See Exhibit

9  A, Line 193), T.F., (46 visits to TMT – See Exhibit A, Line 48), S.P. (56 visits to TMT –

10 See Exhibit A, Line 133), G.N. (59 visits to TMT –See Exhibit A, Line 124).

11     54.     Beyond the threat of being fired, ANDREW JACOBS also instituted what

12 can be described as a the "Patient Retention Program" at TMT and TRT which unethically

13 incentivized the staff to see patients beyond what was medically necessary. Although the

14 required numbers have changed over time, generally TMT's massage practitioners were

15 required to see at least 35 patients per week and TRT's physical therapists were required to

16 see 15 patients per day. Further, the TMT massage practitioners were told to see

17 individual patients, at a minimum, for 32 total visits, and would receive cash bonuses if

18 they hit the target of 41 visits. The massage practitioners, for example, would receive a

19 $50 bonus for providing a patient with 32 massages, and a $150 bonus for 41 massages.

20     55.     The Patient Retention Program was diligently tracked on a form that was

21 kept within the claimant's medical file. However, the billing coordinator, Meghan

22 Lawrence, was instructed by ANDREW JACOBS to not disclose that form pursuant to a

23 subpoena or request for medical records from an insurance company. To do so would have

24 tipped off an insurance company to their fraudulent scheme of predetermined care, which

25 blatantly disregarded the medical necessity of such treatment in favor of unethically

26 building up TMT/TRT's medical specials.

27     56.     Employees of TMT and TRT were known to track down patients to get

FIRST AMENDED
COMPLAINT - 14
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

them to come in for more treatment so they could get their bonuses and to meet their required quota.

57.     ANDREW JACOBS instructed his employees to bill up to a certain dollar amount ($6,500) on massage, because billing more than that amount would not be convincing to a judge or arbitrator.  Thus, the treatment focus was clearly not on patient care, but rather how much TMT and TRT could feasibly collect from insurance companies.

58.     In third party claims, ANDREW JACOBS required the massage practitioners and physical therapists to cease treating their patient if the patient was unrepresented after 5 visits. ANDREW JACOBS  called these patients a "financial liability." The patients were regarded as a "financial liability" because TMT and TRT were set up to make a profit through auto accident insurance proceeds and L&I claims, and without representation, they would not be able to perpetuate their fraudulent scheme as an individual patient paying out of their own pocket would not agree to the excessive treatment and egregious billing.

59.     The treatment which both TMT and TRT provided was based upon a standardized pattern with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values or direct payments to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually healing injuries.  The Defendants, and each of them, caused to be presented to the Plaintiffs bills from an illegal entity and also grossly exaggerated bills for treatment that was medically unnecessary for claims identified in Exhibit A.

60.     The Plaintiffs further allege that all the Defendants prepared and/or caused to be presented to the Plaintiffs, between 2006 and the present, medical reports and billing records that falsely reported symptoms, complaints, and injuries for the claimants identified in Exhibit A which were either exaggerated or not supported at all by the facts of the accident, that made pre-programmed, unsubstantiated findings and diagnoses and which prescribed treatment plans which were more consistent with generating large

FIRST AMENDED
COMPLAINT - 15
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  medical bills rather than patient-centered and evidence-based treatment of the patients'
2  actual clinical conditions.

3      61.    An example of falsely reported symptoms and/or complaints are found in
4  the following claim listed within Exhibit A: Claimant N.D., (Exhibit A, Line 39) stated
5  under oath that he did not complain of numbness, dizziness or weakness, yet these
6  symptoms are listed within this claimant's records from TMT/TRT.

7      62.    TMT's and TRT's reports and records, including SOAP (Subjective,
8  Objective, Assessment, Prognosis) notes, for claimants were prepared under the direction
9  of ANDREW JACOBS. TMT's and TRT's reports were filled with substantially similar
10  descriptions and virtually identical statements, regardless of the actual circumstances of the
11  accident, or the age and physical condition of the claimant, all designed to misrepresent the
12  need for ongoing treatment. SOAP notes were often filled out before patients were seen or
13  simply copied from the prior visit without any substantive changes. Typically, TMT's and
14  TRT's patient records reported generic symptoms and conditions not related to any
15  specific patient's presentation. Based upon such reports, patients were treated according to
16  a "recipe" of medically unnecessary care consisting of primarily excessive, duplicative,
17  and unnecessary massage therapy and physical therapy from.

18      63.    ANDREW JACOBS required the massage practitioners and physical
19  therapists at TMT and TRT to bill for treatment that was not rendered.

20      64.    ANDREW JACOBS instructed the massage therapists to bill for 4 units (1
21  hour) of treatment regardless of the amount of therapy actually received by the patient (i.e.
22  2 units for 30 minutes). An example of this can be found in the claim of D.G. (Exhibit A,
23  Line 56), where the vast majority of his massage therapy treatments were 45 minutes (3
24  units), but yet he was billed for 1 hour (4 units) treatments. ANDREW JACOBS further
25  instructed employees to bill for visits even if that patient did not show for treatment.

26      65.    ANDREW JACOBS instructed the physical therapists to bill for more units
27  of treatment regardless if the patient needed the treatment or even received the treatment.

FIRST AMENDED
COMPLAINT - 16
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1 This was required of the physical therapists in order to increase the amount of physical
2 therapy bills.

3       66.    Plaintiff's further allege that ANDREW JACOBS, through TMT and TRT,
4 provided improper financial benefits to physicians and chiropractors as "kickbacks" in
5 order to obtain new patient referrals and continued patient referrals to TMT and TRT.
6 Such referrals were often at the request of TMT and TRT staff, under the direction of
7 ANDREW JACOBS and LEMINGS. Examples of kickbacks include: tickets to Seattle
8 Sounders games in a suite with ANDREW JACOBS, catered lunches provided to
9 physicians and chiropractors offices by a chef employed by TMT/TRT, complimentary
10 massages at TMT, Trans-Siberian Orchestra tickets, joint real estate investments, loans for
11 properties and businesses, and other gifts. Such activities are in violation of the
12 Washington Anti-Rebating Statute and constitute a misdemeanor, RCW 19.68, *et seq.* In
13 order to facilitate this "kickback" program, ANDREW JACOBS "thanked" the referral
14 providers by spending $20,000 per month on what he called "marketing." Such activities
15 were in large part conducted through DSM. DSM employees were instructed to market
16 TMT and TRT to medical providers. DSM also bought tickets to sporting events, provided
17 gift cards, and catered lunches for various doctors in exchange for referrals to TMT, and
18 TRT.

19       67.    ANDREW JACOBS required the massage practitioners and physical
20 therapists to make sure that their patients were referred to each other in order to increase
21 the amount of total bills, regardless if the patient needed the treatment or not. Employees
22 believed they could be fired if they did not implement this referral scheme.

23       68.    After TRT came into existence in 2008, the vast majority of their patients
24 received treatment at both TMT and TRT via referrals from a medical doctor or
25 chiropractor. Referral doctors many times automatically referred patients to TMT/TRT
26 prior to seeing the patients. Patients were also not given a choice to choose alternative
27 facilities. TMT and TRT staff would arrange for referrals on behalf of patients in order to

FIRST AMENDED
COMPLAINT - 17
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  assure they would be sent back to either TMT or TRT. Patients were automatically sent to

2  TMT or TRT and rarely anywhere else. Such activities are in violation of the Washington

3  Anti-Rebating Statute and constitute a misdemeanor, RCW 19.68, *et seq.*

4       69.    TMT, TRT, ANDREW JACOBS and MELANIE JACOBS never disclosed

5  to their patients in writing that there was common ownership between TMT and TRT and

6  likewise the patients were never provided alternative places to treat. Such activities are in

7  violation of the Washington Anti-Rebating Statute and constitute a misdemeanor, RCW

8  19.68, *et seq.*

9       70.    WESLEY MCLAUGHLIN, the partial owner of MCLAUGHLIN LAW,

10  represented over forty-three and one half percent (43.5%) of the claimants listed in Exhibit

11  A.

12       71.    Plaintiffs are informed and believe that Andrew Jacobs, a non-attorney, also

13  maintained an ownership interest in MCLAUGHLIN LAW. Plaintiffs are further informed

14  and believe that MCLAUGHLIN LAW paid money through DSM as a way to funnel

15  money from the law firm to ANDREW JACOBS. ANDREW JACOBS' profits from his

16  interest in MCLAUGHLIN LAW were at times sent to him through DSM.

17  MCLAUGHLIN LAW issued lump sum payments through DSM to JACOBS based on

18  MCLAUGHLIN LAW profits over a given time period. ANDREW JACOBS would also

19  instruct WESLEY MCLAUGHLIN to transfer money from MCLAUGHLIN LAW to

20  JACOBS through DSM. MCLAUGHLIN LAW would fraudulently disguise these

21  payments as marketing expenses. MCLAUGHLIN LAW has paid and continues to pay

22  ANDREW JACOBS through DSM to buy out ANDREW JACOBS' ownership interest in

23  MCLAUGHLIN LAW. Further, funds from ANDREW JACOBS' ownership interest in

24  MCLAUGHLIN LAW were used by DSM to further the improper kick-back scheme

25  through payments to various medical providers in exchange for referrals to TMT and TRT.

26       72.    WESLEY MCLAUGHLIN holds or has held other mutual investments with

27  ANDREW JACOBS, including, but not limited to, Lakewood's Finest (a warehouse and

FIRST AMENDED
COMPLAINT - 18
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  rental property) and Salstrom Motors (an automobile dealership in Tacoma).

2      73.    At all times relevant herein, WESLEY MCLAUGHLIN provided his

3  employee, LEMINGS to ANDREW JACOBS and TMT/TRT to act also as an employee,

4  contractor and/or agent of TMT/TRT to implement the fraudulent scheme described above.

5      74.    WESLEY MCLAUGHLIN listed LEMINGS on the MCLAUGHLIN LAW

6  letterhead, implying that LEMINGS was an attorney when he was not.

7      75.    At TMT/TRT, LEMINGS was responsible for hiring and firing employees.

8  In fact, he fired employees for not meeting their patient retention quota as described above.

9  LEMINGS was signatory on the TMT/TRT bank accounts from Valley Bank and signed

10 payroll checks for employees. LEMINGS further ran weekly and monthly meetings at

11 TMT/TRT to make sure the fraudulent scheme was being implemented.

12     76.    LEMINGS owns and/or controls NANDY, which he, at all relevant times

13 herein, operated in support of his positions at TMT, TRT, and MCLAUGHLIN LAW For

14 example, WESLEY MCLAUGHLIN, provided MCLAUGHLIN LAW business cards for

15 TMT/TRT employees and LEMINGS to hand out to TMT/TRT patients and while

16 WESLEY MCLAUGHLIN'S name was listed as the attorney on the business card, the

17 phone number was owned and controlled by NANDY and answered by LEMINGS. This

18 and among other things, allowed LEMINGS, through MCLAUGHLIN LAW and NANDY

19 to participate in the unauthorized practice of law.

20     77.    MCLAUGHLIN, as an attorney, is responsible for representing to insurance

21 companies what the insurers are to pay for his client's claim and in doing so, sends letters

22 demanding payment, alleging that the bills are legitimate.  WESLEY MCLAUGHLIN, as

23 an attorney, gives the appearance of credibility to the bills as legitimate, when in fact they

24 are not. WESLEY MCLAUGHLIN had knowledge that TMT and TRT, at all relevant

25 times, were illegal entities and rendering excessive and unnecessary care. He gained this

26 knowledge not only through his personal and investment relationship with ANDREW

27 JACOBS, but also through his employee LEMINGS whom had managerial control at both

FIRST AMENDED
COMPLAINT - 19
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

MCLAUGHLIN LAW and TMT/TRT.

78. ANDREW JACOBS, WESLEY MCLAUGHLIN and LEMINGS devised a referral scheme wherein TMT and TRT patients are referred to MCLAUGHLIN LAW. ANDREW JACOBS and LEMINGS instructed all employees of TMT and TRT to refer "new" patients to MCLAUGHLIN LAW. Employees that referred a patient from TMT or TRT to MCLAUGHLIN LAW were given bonuses for this unethical behavior, specifically a $100 cash bonus or gift card for each referral. Further, select staff at TMT and TRT received year-end bonuses (i.e. iPods, North Face Jackets, hotel stays, dinners and spa gift cards, etc.) for referring the most patients to MCLAUGHLIN LAW that year. These referral bonuses were paid by MCLAUGHLIN LAW and WESLEY MCLAUGHLIN and handed out by LEMINGS. The referrals and bonuses were a routine part of doing business at TMT and TRT, and were coordinated by LEMINGS. Because TMT and TRT staff were required to refer to MCLAUGHLIN LAW, this allowed ANDREW JACOBS, LEMINGS, and WESLEY MCLAUGHLIN to maintain control of the scheme to inflate settlements.

79. ANDREW JACOBS and LEMINGS also required the massage therapists and physical therapists to encourage already represented patients to meet with LEMINGS at MCLAUGHLIN LAW to get a "second opinion" in order to encourage them to change counsel. This would serve to increase the pie of money being filtered through the Defendant entities.

80. MCLAUGHLIN LAW, by and through WESLEY MCLAUGHLIN and LEMINGS, would also refer clients to TMT and TRT, despite knowing that they, among other things, were illegal entities.

81. If a patient was unrepresented and referred to MCLAUGHLIN LAW, LEMINGS would often meet the patients at the TMT/TRT facilities to sign them up and fill out paperwork for MCLAUGHLIN LAW. Many of these patients believed LEMINGS to be their attorney as he passed himself off as such. An example of this is seen in the claim of M.K. (See Exhibit A, Line 84) wherein he stated within his records that

FIRST AMENDED
COMPLAINT - 20
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1     LEMINGS was his attorney from MCLAUGHLIN LAW. LEMINGS had substantial

2     influence over the claimants and the billing practices as he was a common employee of

3     TMT/TRT and MCLAUGHLIN LAW. This allowed the Defendants to send a steady

4     stream of claimants to MCLAUGHLIN LAW and simultaneously enforce the Patient

5     Retention Program, predetermined care and billing for treatment not rendered.

6         82.     In cases involving liability claims, after rendering their purported care to the

7     claimants, TMT and TRT, at the direction of ANDREW JACOBS and LEMINGS, would

8     then submit to the claimants' respective legal counsel, including but not limited to

9     MCLAUGHLIN LAW, medical records and invoices for therapy. The claimants' counsel,

10     including but not limited to MCLAUGHLIN LAW, used the inflated billings statements as

11     leverage to extract artificially enhanced settlements.

12         83.     The Defendants all worked in concert together for the shared purpose of

13     defrauding the Plaintiffs. In order to achieve this purpose, the Defendants developed

14     relationships with each other and worked in concert over a period of time from at least

15     2006 forward. In addition, the individuals employed by or associated with each entity

16     Defendant participated in performing the predicate acts which constitute the racketeering

17     and fraudulent activity alleged.

18         84.     The Plaintiffs first became aware of the injuries caused by the Defendants'

19     wrongful conduct in Mid-2012. The Plaintiffs had no actual knowledge of the Defendants'

20     malfeasance and tortious conduct before Mid-2012. The Plaintiffs could not have

21     discovered, through the use of reasonable diligence, the existence of facts, evidence and

22     circumstances establishing the injuries caused by the wrongful conduct of the Defendants

23     any sooner than this time. In Mid-2012 the Plaintiffs became aware that the conduct of the

24     Defendants had been ongoing (unbeknownst by the Plaintiffs) from as far back as 2006

25     through at least Mid-2012.

26                     **<u>COUNT ONE</u>**
**Racketeer Influenced And Corrupt Organizations Act**

27     **18 U.S.C. § 1962(c) – Conduct of Enterprise Through Racketeering**

FIRST AMENDED                                           McCormick Barstow, LLP
COMPLAINT - 21                                        800 5th Avenue, Suite 4100
Case No. 3:13-CV-05214-RBL                      Seattle, Washington 98104
                                                          Ph. (206) 576-3700

**(Against All Defendants)**

85.     The Plaintiffs re-allege and restate paragraphs 1 through 84 as if fully set forth herein.

86.     The Plaintiffs have standing to seek to recover damages from the Defendants. In this case, the claimants were mere conduits through which the Defendants herein extracted funds from the Plaintiffs to which they were not entitled. As a result of the fraudulent billings, referrals, treatment and medical reports which the participants of the enterprise generated and caused to be presented to the Plaintiffs, the claimants received settlements and judgments in amounts/sums to which (in whole or in part) the claimants were not otherwise entitled. The Defendants knowingly used these individual claimants as the vehicles by which the Defendants fraudulently obtained money from the Plaintiffs to which they were not entitled.

87.     At all relevant times, TMT provided massage therapy treatment for numerous claimants involved with personal injury claims against the Plaintiffs. TMT treated these claimants and knew from inception of the treatment that the best source of payment for that treatment would be monies paid by the Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. ANDREW JACOBS, MELANIE JACOBS, and LEMINGS owned and/or controlled TMT.

88.     At all relevant times, TRT provided physical therapy treatment for numerous claimants involved with personal injury claims against the Plaintiffs. TRT treated these claimants and knew from inception of the treatment that the best source of payment for that treatment would be monies paid by the Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. ANDREW JACOBS, MELANIE JACOBS, and LEMINGS owned and/or controlled TRT.

89.     At all relevant times, MCLAUGHLIN LAW provided legal services for numerous claimants involved with personal injury claims against the Plaintiffs. MCLAUGHLIN LAW represented these claimants and knew from inception of the

FIRST AMENDED
COMPLAINT - 22
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

representation that the best source of payment for any treatment would be monies paid by the Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. ANDREW JACOBS, WESLEY MCLAUGHLIN and LEMINGS owned and/or controlled MCLAUGHLIN LAW.

90. At all relevant times, NANDY provided marketing services to TMT, TRT, and MCLAUGHLIN LAW. LEMINGS owned and/or controlled NANDY.

91. At all relevant times, DSM represented itself as a marketing company, but in actuality DSM provided unethical referral payments on behalf of TMT and TRT, and was largely a conduit to funnel money from MCLAUGHLIN LAW to ANDREW JACOBS. ANDREW JACOBS owned and/or controlled DSM.

92. ANDREW JACOBS was and is an individual "person," within the meaning of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the enterprise as described above. This participation consisted of forming and operating TMT and TRT as various components of the enterprises, and the combined parts of them, through the illegal corporate practice of medicine, the improper kickbacks to physicians an chiropractors in exchange for patient referrals, the illegal referral of patients to lawyers in exchange for monetary kickbacks and the fraudulent massage therapy and physical therapy treatment, and ancillary services and billings described in greater detail above.

93. MELANIE JACOBS was and is an individual "person," within the meaning of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the enterprise as described above. This participation consisted of forming and operating TMT and TRT as various components of the enterprises, and the combined parts of them, through the illegal corporate practice of medicine the improper kickbacks to physicians an chiropractors in exchange for patient referrals, the illegal referral of patients to lawyers in exchange for monetary kickbacks and the fraudulent massage therapy and physical therapy treatment, and ancillary services and billings

FIRST AMENDED
COMPLAINT - 23
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  described in greater detail above.

2      94.    LEMINGS was and is an individual "person," within the meaning of 18

3  U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in the conduct and

4  affairs of the enterprise as described above.  This participation consisted of operating

5  TMT, TRT, DSM, NANDY, and MCLAUGHLIN LAW as various components of the

6  enterprises, and the combined parts of them, through the illegal corporate practice of

7  medicine, the improper kickbacks to physicians an chiropractors in exchange for patient

8  referrals, the illegal referral of patients to lawyers in exchange for monetary kickbacks and

9  the fraudulent massage therapy and physical therapy treatment, and ancillary services and

10  billings described in greater detail above.

11      95.    WESLEY MCLAUGHLIN was and is an individual "person," within the

12  meaning of 18 U.S.C. §§1961(3) and 1962(c), who associated with and/or participated in

13  the conduct and affairs of the enterprise as described above.  This participation consisted of

14  operating MCLAUGHLIN LAW as various components of the enterprises, and the

15  combined parts of them, through the illegal referral of patients to MCLAUGHLIN LAW in

16  exchange for monetary kickbacks, and the misuse of fraudulent massage therapy and

17  physical therapy treatment, and ancillary services and billings described in greater detail

18  above.

19      96.    TMT is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c)

20  who associated with and/or participated in the conduct of the affairs of the enterprise as

21  described above.  This participation consisted of forming and operating the various

22  components of the enterprise and the combined parts of them, through the illegal treatment of

23  patients, improper solicitation of patients, improper kickbacks to chiropractors and physicians,

24  the referral of the patients to lawyers for monetary kickbacks and the submission of fraudulent

25  therapy services and billings described in greater detail above.

26      97.    TRT is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c)

27  who associated with and/or participated in the conduct of the affairs of the enterprise as

FIRST AMENDED
COMPLAINT - 24
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

described above. This participation consisted of forming and operating the various components of the enterprise and the combined parts of them, through the illegal treatment of patients, improper solicitation of patients, improper kickbacks to chiropractors and physicians, the referral of the patients to lawyers for monetary kickbacks and the submission of fraudulent therapy services and billings described in greater detail above.

98. NANDY is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c) who associated with and/or participated in the conduct of the affairs of the enterprise as described above. This participation consisted of forming and operating the various components of the enterprise and the combined parts of them through the improper solicitation of patients, the improper payment of kickbacks for the referral of patients, and the knowing submission of fraudulent billings generated by the enterprise, as discussed more fully above.

99. DSM is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c) who associated with and/or participated in the conduct of the affairs of the enterprise as described above. This participation consisted of forming and operating the various components of the enterprise and the combined parts of them through the improper solicitation of patients and clients, the improper payment of kickbacks for the referral of patients and clients, and the knowing submission of fraudulent billings generated by the enterprise, as discussed more fully above.

100. MCLAUGHLIN LAW is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c) who associated with and/or participated in the conduct of the affairs of the enterprise as described above. This participation consisted of forming and operating the various components of the enterprise and the combined parts of them through the improper solicitation of patients, the improper payment of kickbacks for the referral of patients to lawyers over whom it exerted control, the unauthorized practice of the law and the knowing submission of fraudulent billings generated by the enterprise as discussed more fully above.

FIRST AMENDED
COMPLAINT - 25
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

101. The combination of TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, DSM, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN constituted an "association in fact" enterprise within the meaning of 18 U.S.C. §1961(4). These Defendants all worked in concert together for the shared purpose of defrauding the Plaintiffs. In order to achieve this purpose, these Defendants developed relationships with each other and worked in concert over a period of time from at least 2006 forward. In addition, the individuals employed by or associated with each entity Defendant, joined and became part of the association in fact enterprise by combining with the entities with whom they were not employed, and with the individuals employed by those entities, in performing the predicate acts which constitute the racketeering activity alleged above and below.

102. With regard to the actual treatment of TMT and TRT patients, the Defendants were instrumental in carrying out the fraudulent scheme of the enterprise. At all relevant times TMT and TRT were operating as illegal entities because as they were engaging in the corporate practice of medicine in violation of the Washington Professional Services Corporation Act, RCW 18.100, *et seq.* As such, the Defendants and each of them, knew that TMT/TRT were operating as illegal entities and yet the Defendants submitted bills to Plaintiffs that were illegal, unreasonable and unnecessary. Further, the treatment which TMT and TRT provided was based upon a standardized pattern developed by the enterprise participants with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually healing injuries.

103. Under the auspices of purportedly legitimate professional corporations, the structures were in place for ANDREW JACOBS, MELANIE JACOBS, and LEMINGS to conduct the enterprise's illicit referral schemes and for the enterprise to benefit from the income being realized by TMT, TRT and MCLAUGHLIN LAW.

FIRST AMENDED
COMPLAINT - 26
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

104.     At all relevant times, TMT and TRT provided treatment, care and referrals for numerous claimants involved with personal injury claims against the Plaintiffs. ANDREW JACOBS and MELANIE JACOBS owned and/or controlled TMT and TRT. Others employed by TMT and TRT saw claimants, generated written reports, made referrals and created bills for the professional services rendered at TMT and TRT at the direction of ANDREW JACOBS and LEMINGS.

105.     Between 2006 through the present, TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, DSM, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN conducted, participated in, engaged in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(5) and 1962(c).

106.     TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, DSM, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN, either directly or through employees, committed predicate acts of mail fraud and wire fraud within the meaning of 18 U.S.C. §§1341, 1343 and 1961(1).  These acts consisted of making false and misleading statements, or statements made as an artifice or scheme to defraud, in written medical records and associated billing records relating to services, diagnoses, tests, and treatments that either were rendered from an illegal entity, medically unnecessary or at a minimum were greatly exaggerated or embellished, for the specific intent and purpose of supporting inflated and fraudulent settlement demands in personal injury cases for which these services were performed.

107.     Upon referrals of those patients, MCLAUGHLIN LAW, WESLEY MCLAUGHLIN and LEMINGS would then knowingly take advantage of TRT's and TMT's inflated billing statements to negotiate artificially enhanced settlements – all in an effort to perpetrate a fraud on insurance companies, including Allstate.

108.     The separate acts of mail and wire fraud are numerous, but consist, at a minimum, of at least one hundred seventy-nine (179) (See list of claimants in Exhibit A)

FIRST AMENDED
COMPLAINT - 27
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

separate mailings and/or wire transmissions of information included within medical records, diagnoses, and/or treatments to attorneys retained by claimants and or Plaintiffs themselves for the purposes of carrying out the enterprise's fraudulent scheme. The predicate acts further consist of mailings and or wire transmissions of fraudulent information to Plaintiffs designed to enhance the value of the claimants' cases for the purposes of supporting those claimants' artificially enhanced settlement demands.

109. Every act of falsehood or item containing misleading information in such transmissions, facilitated through the use of the United States Mail or wire transmissions, constitutes a separate act of mail and/or wire fraud and hence a separate predicate act within the meaning of RICO and cases interpreting RICO as well as the mail fraud provisions of 18 U.S.C. §1341, and wire fraud provisions of 18 U.S.C. §1343, which are both recognized predicate acts of racketeering activity under 18 U.S.C. §1961(1) and (4).

110. From in or about 2006 through the present, the Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud certain entities, including the Plaintiffs, by obtaining money from these entities through false and fraudulent pretenses and representations. These acts all occurred after the effective date of the RICO Act and more than two such acts occurred within ten years of one another.

111. The Plaintiffs became aware of the injury caused by the Defendants' pattern of racketeering activity in Mid-2012. The Plaintiffs could not have discovered, through the use of reasonable diligence, the injury caused by the predicate acts of racketeering activity any sooner than this time. Prior to Mid-2012, the Plaintiffs were unaware of the fraudulent conduct and activity of the Defendants. Up until that point, it was reasonable, proper and appropriate for the Plaintiffs to rely upon the documents the Plaintiffs received in evaluating and ultimately settling the claims of those individuals set forth in Exhibit A.

112. At all relevant times, the enterprise alleged above was engaged in, and its activities affected, interstate commerce. Not only were the Defendants aware that their activities would have an effect on interstate commerce, but, more importantly, many of the

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1   fraudulent and false representations at issue were actually transmitted by wire and or sent

2   through the mail across state lines.

3       113.    All of the predicate acts described in this Complaint were related and

4   establish a pattern of racketeering activity, within the meaning of 18 U.S.C. §1962(c), in

5   that their common purpose, and their common result, was to defraud the Plaintiffs of

6   money.  The Plaintiffs were the victim of the acts of racketeering; and/or the acts of

7   racketeering were otherwise interrelated by distinguishing characteristics and were not

8   isolated events.

9       114.    All of the predicate acts described within this Complaint were continuous so

10  as to form a pattern of racketeering activity in that "persons" participating in the enterprise

11  engaged in the predicate acts over a substantial period of time or in that such predicate acts

12  had become part of the enterprise participants' regular way of conducting business and said

13  business practices would have continued indefinitely into the future but for this lawsuit.

14      115.    At all times, the Plaintiffs were the reasonably foreseeable and/or

15  anticipated victims of the Defendants' scheme and the Plaintiffs were the target or victim

16  of the fraudulent scheme to have the Plaintiffs pay damages or settlements based on

17  TMT's and TRT's fraudulent medical reports and billings.  The Defendants reasonably

18  knew that the Plaintiffs would have a legal obligation to negotiate in good faith and make

19  reasonable attempts to settle the underlying claims.  As such, it was reasonably foreseeable

20  and anticipated that the Plaintiffs would rely on the conduct, documents and other

21  information provided by the Defendants in evaluating the respective cases and, ultimately,

22  entering into settlements.

23      116.    The Plaintiffs were directly injured by TMT, TRT, ANDREW JACOBS,

24  MELANIE JACOBS, NANDY, LEMINGS, DSM, MCLAUGHLIN LAW, and WESLEY

25  MCLAUGHLIN's fraudulent conduct, since the Plaintiffs paid settlements and judgments

26  that were based, at least in part, on inflated and illegal medical bills, illegal referrals, and

27  procedures that were not medical necessary.

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1    117.    As a direct and proximate result of, and by reason of, the activities of TMT,

2    TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS, DSM,

3    MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN and their conduct in violation of 18

4    U.S.C. §1962(c), the Plaintiffs have been injured in their business or property, within the

5    meaning of 18 U.S.C. §1964(c)

6    118.    Among other things, the Plaintiffs have suffered damages to the extent they

7    paid for settlements or judgments of TMT and TRT patients on the basis of illegal and

8    fraudulently inflated billings.  The Plaintiffs are, therefore, entitled to recover threefold the

9    damage they have sustained together with the cost of the suit including costs, reasonable

10   attorneys' fees and reasonable experts' fees.

11                                   **COUNT TWO**
                  **Racketeer Influenced And Corrupt Organizations Act**
12                        **18 U.S.C. §1962(d) – Conspiracy**

13                              **(Against All Defendants)**

14   119.    The Plaintiffs re-allege and restate paragraphs 1 through 118 as if fully set

15   forth herein.

16   120.    Upon Plaintiffs' information and belief, TMT, TRT, ANDREW JACOBS,

17   MELANIE JACOBS, NANDY, LEMINGS, MCLAUGHLIN LAW, DSM, and WESLEY

18   MCLAUGHLIN, and each of them, conspired together to conduct or participate, directly

19   or indirectly, in the conduct of the affairs of the enterprise described within this Complaint

20   through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).  In particular,

21   the Defendants intended to further an endeavor which, if completed, would satisfy all of

22   the elements of a fraudulent scheme to extract excessive settlement monies from insurers,

23   including the Plaintiffs.  Further, the Defendants agreed to use the U.S. Mail and/or wire

24   services such as telephone, facsimile or email to carry out their fraudulent scheme.

25   121.    From in or about 2006 through the present, the Defendants knowingly and

26   willfully, and with intent to defraud, devised a scheme to defraud insurance companies,

27   including the Plaintiffs, by obtaining money from these insurance companies through false

and fraudulent pretenses and representations as detailed above.

122. The Plaintiffs were injured by the co-conspirators' overt acts that are acts of racketeering or otherwise unlawful under the RICO Act, which included (among other acts) acts of mail and wire fraud.

123. As a direct and proximate result of, and by reason of, the activities of the co-conspirators of the enterprise, and the conspiracy alleged herein, the Plaintiffs have been injured in its business or property, within the meaning of 18 U.S.C. §1964(c).

124. The Plaintiffs have suffered damages to the extent the co-conspirators and/or each of them, received money from settlements or judgments paid by the Plaintiffs on the basis of TMT's and TRT's illegal, fraudulent and inflated billings. The Plaintiffs have additionally suffered further damages to the extent the Plaintiffs had to settle, for grossly inflated amounts, claims with first party claimants who had pending personal injury claims with the Plaintiffs, directly, or claims of third party claimants against the Plaintiffs' insureds. The Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

### COUNT THREE
**Washington State RICO Violations – RCW 9A.82.100, *et seq.***
**(Against All Defendants)**

125. The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 124 of the Complaint as if fully set forth herein.

126. Each of the fraudulent claims described above demonstrate that the Defendants committed: (1) trafficking in insurance claims as defined in RCW 48.30A, *et seq.*; (2) unlawful practice of law as described in RCW 2.48, *et seq.* (3) unlicensed practice of a profession or business as defined in RCW 18.130.190(7); (4) health care false claims as defined in RCW 48.80.030; and (5) leading organized crime as defined in RCW 9A.82.060.

127. The Defendants worked in concert to make false and fraudulent

FIRST AMENDED
COMPLAINT - 31
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1 representations, reports, bills and referrals in support of excessive, medically unreasonable

2 and inflated claims with the intent to obtain and did, in fact, obtain insurance proceeds that

3 the Defendants knew they had no right to receive.

4      128.   The Plaintiffs justifiably and reasonably relied upon these misleading

5 documents and misrepresentations to their detriment in evaluating, assessing and paying

6 insurance claims and claims-related expenses.

7      129.   As set forth above, TMT, TRT, ANDREW JACOBS, MELANIE JACOBS,

8 NANDY, LEMINGS, MCLAUGHLIN LAW, and WESLEY MCLAUGHLIN together

9 constitute an association in fact enterprise separate and distinct from each Defendant.

10 TMT, TRT, ANDREW JACOBS, MELANIE JACOBS, NANDY, LEMINGS,

11 MCLAUGHLIN LAW, DSM, and WESLEY MCLAUGHLIN conducted and participated

12 in the affairs of said enterprise through a pattern of racketeering activity.

13      130.   The Defendants conducted the affairs of the foregoing enterprise through

14 criminal profiteering as identified above.

15      131.   The Defendants associated with the enterprise and participated directly or

16 indirectly in the conduct of the enterprise through criminal profiteering as identified above.

17      132.   The predicate acts committed by the Defendants were not isolated, but

18 related by similar pattern, intent, result, accomplices, victim and method of commission.

19      133.   The Plaintiffs have been injured in its business and property by reason of

20 the Defendants' misconduct.

21      134.   By virtue of the Defendants' violations, the Plaintiffs are entitled to recover

22 from each Defendant identified three times the damages sustained by reason of the claims

23 submitted by the Defendants, and others acting in concert with them, together with the

24 costs of suit including reasonable attorneys' fees and investigative costs.

25      135.   The Plaintiffs demand judgment against the Defendants as follows: actual

26 and consequential damages to be established at trial; treble damages, interest, costs and

27 reasonable attorneys' fees; investigative costs; and injunctive relief enjoining the

FIRST AMENDED
COMPLAINT - 32
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  Defendants from engaging in the wrongful activities alleged in the Complaint as the Court

2  deems just.

3  ## COUNT FOUR
   ### Fraud And Intentional Misrepresentation

4  ### (Against All Defendants)

5       136.    The Plaintiffs re-allege and restate paragraphs 1 through 135 as if fully set

6  forth herein.

7       137.    At all times herein relevant, the Defendants knowingly communicated to the

8  Plaintiffs false representations of material fact in their reports, records, referrals and

9  billings, all coming from illegal entities. The Defendants engaged in numerous

10 misrepresentations pursuant to the scheme, set forth with particularity above in this

11 Complaint. This includes, but is not limited to numerous evaluations and treatment

12 reports, referrals and billing records of TMT and TRT containing statements of services

13 that were not rendered, were grossly exaggerated, and misrepresentations that services

14 were medically necessary or called for by the condition presented by the claimants.

15      138.    At all times herein relevant, the Defendants knew and intended that others,

16 such as insurance companies like the Plaintiffs, would rely on their misrepresentations in

17 evaluating pending claims against the Plaintiffs' insureds or by the Plaintiffs' insureds

18 themselves. The Defendants made these misrepresentations with knowledge of their

19 falsity or at minimum in reckless disregard for their truth. The Defendants knew that

20 numerous referrals were excessive, illegal, and not medically necessary. Further, the

21 Defendants were aware that the diagnoses provided were not accurate and were not

22 supportable by the medical evidence present. The Defendants acted to aggrandize

23 themselves financially by submitting bills from illegal entities and also inflating the

24 medical bills knowing that settlement decisions are made in material part on the extent of

25 medical treatment and cost.

26      139.    From in or about 2006 through the present, the Defendants knowingly and

27 willfully, and with intent to defraud, devised a scheme to defraud certain entities, including

FIRST AMENDED
COMPLAINT - 33
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1  the Plaintiffs, by obtaining money from these entities through false and fraudulent

2  pretenses and representations.

3      140.   In making the above-described misrepresentations, the Defendants intended

4  to defraud the Plaintiffs and to induce the Plaintiffs' reliance. The Defendants were aware

5  that the claimants each had litigated claims for which insurance would be the likely source

6  of recovery. The Defendants further were aware that the professional services being

7  provided by them would be paid from the proceeds of any settlement or judgment paid by

8  the Plaintiffs. The Defendants' reports, referrals and bills each included medically

9  unnecessary services in these claims, all of which would be used to form the basis for a

10 monetary settlement and/or payment.

11     141.   At all times herein relevant, the Plaintiffs reasonably and justifiably relied,

12 to its detriment, on the misrepresentations made by the Defendants. The Plaintiffs have a

13 legal obligation to protect the interests of its insureds and pay reasonable bills, judgments

14 and/or settlements of claims involving their insureds. Thus, the Plaintiffs were legally

15 bound to pay money, pursuant to their policies with their insureds, to resolve claims caused

16 by the negligence of the Plaintiffs' insureds or others who injured the Plaintiffs' insureds.

17 Because of the Defendants' fraudulent conduct, the Plaintiffs greatly overvalued and thus,

18 overpaid, for the settlements of over **one hundred seventy-nine (179)** claimants.

19     142.   The above-described actions of the Defendants that constituted violations of

20 RCW 18.100, *et seq.* and RCW 19.68, *et seq.* were material to the Plaintiffs' reliance upon

21 the misrepresentations of the Defendants.

22     143.   The Defendants' misrepresentations proximately caused damages to the

23 Plaintiffs. As a direct and proximate result of the Defendants' fraud and intentional

24 misrepresentations, the Plaintiffs have suffered damages.

25     144.   Further, the conduct of the Defendants, as described within this Complaint

26 was willful, malicious, and done with a conscious and reckless disregard to the Plaintiffs

27 and with the purpose of fraudulently obtaining money from the Plaintiffs through dishonest

1    and untruthful billings, reports, records and referrals.

2    **COUNT FIVE**
**Conspiracy To Defraud**

3

   **(Against All Defendants)**

4    145.    The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through

5    144 of the Complaint as if fully set forth herein.

6    146.    At all times herein relevant, the Defendants consist of two or more persons

7    or business entities who, had a shared objective to be accomplished, had a meeting of the

8    minds on how to achieve their objective, committed one or more unlawful or overt acts in

9    furtherance of that objective, and this conspiracy resulted in damages to the Plaintiffs.

10    147.    All of the Defendants, jointly and individually, had an agreement whereby

11    they each knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and

12    otherwise further a scheme to defraud the Plaintiffs through the illegal entities of

13    TMT/TRT. The objective of this conspiracy was to generate as many fees as possible, all

14    of which would be paid by the Plaintiffs as part of any settlement or satisfaction of a

15    judgment concerning the involved patients.

16    148.    These co-conspirators engaged in numerous wrongful acts pursuant to their

17    agreement to defraud insurers such as the Plaintiffs as set forth with particularity above in

18    this Complaint.

19    149.    From in or about 2006 through the present, the Defendants knowingly and

20    willfully, and with intent to defraud, devised a scheme to defraud insurance companies,

21    including the Plaintiffs, by obtaining money from these insurance companies through false

22    and fraudulent pretenses and representations.

23    150.    The above-described actions of the Defendants that constituted violations of

24    RCW 18.100, *et seq*. and RCW 19.68, *et seq*. were material to the Plaintiffs' reliance upon

25    the misrepresentations of the Defendants.

26    151.    As a direct and proximate result of the herein alleged conspiracy to defraud

27    the Plaintiffs, the Plaintiffs have suffered damages.

FIRST AMENDED
COMPLAINT - 35
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1    152. Further, the conduct of the Defendants, as described within this Complaint

2    was willful, malicious, and done with a reckless disregard to the Plaintiffs and with the

3    express purpose of obtaining money from the Plaintiffs through fraudulent billings, reports,

4    records and referrals.

## COUNT SIX
**Violation of the Washington Consumer Protection Act, RCW 19.86, et seq.**
**(Against All Defendants)**

7    153. The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through

8    152 of the Complaint as if fully set forth herein.

9    154. The Defendants engaged in unfair and deceptive acts occurring in trade or

10   commerce as it pertained to billing insurance companies for alleged health care services,

11   illegal ownership and control, predetermined care, rebating for health care services, and

12   operation of illegal health care facilities. The Defendants' acts constitute a violation of the

13   Washington Consumer Protection Act, RCW 19.86, et seq.

14   155. The unfair and deceptive acts of the Defendants affect the public interest.

15   For example, the Defendants deprived otherwise legitimate physical therapy and massage

16   therapy clinics the ability to legally participate in the marketplace and to reasonably treat

17   those patients TMT/TRT purportedly treated. Moreover, numerous insurance companies

18   in Washington have paid money on illegitimate claims stemming from TMT/TRT, thus

19   impacting the public (its insureds).

20   156. The unfair and deceptive acts of the Defendants were the direct and

21   proximate cause of damages to the Plaintiffs' business and/or property.

22   157. The unfair and deceptive acts of the Defendants have injured other persons.

23   For example, the Defendants deprived otherwise legitimate physical therapy and massage

24   therapy clinics the ability to legally participate in the marketplace and to reasonably treat

25   those patients TMT/TRT purportedly treated. Moreover, numerous insurance companies

26   in Washington have paid money on illegitimate claims stemming from TMT/TRT, thus

27   impacting the public (its insureds).

FIRST AMENDED
COMPLAINT - 36
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

158.     The unfair and deceptive acts of the Defendants had and continue to have the capacity to injure other persons. For example, the Defendants are currently depriving otherwise legitimate physical therapy and massage therapy clinics the ability to legally participate in the marketplace and to reasonably treat those patients TMT/TRT purportedly treated.  Moreover, numerous insurance companies in Washington are continuing to pay money on illegitimate claims stemming from TMT/TRT, thus impacting the public (its insureds).

159.     The above-described actions of the Defendants that constituted violations of RCW 18.100, *et seq*. and RCW 19.68, *et seq*. were material to the unfair and deceptive acts of the Defendants.

160.     The damages to the Plaintiffs include, but are not limited to, payments it made to the Defendants, payments to others, treble damages pursuant to statute, the Plaintiffs' investigative attorney fees and costs, and all other expenses.  The specific amount of damage suffered by the Plaintiffs will be proven at trial.

**COUNT SEVEN**
**Constructive Trust and Unjust Enrichment**
**(Against All Defendants)**

161.     The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 160 of the Complaint as if fully set forth herein.

162.     At all relevant times, the Defendants fraudulently obtained money in the form of insurance payments and settlement proceeds from the Plaintiffs under such circumstances that, in equity, such money should be returned.

163.     At all relevant times, the Defendants had a relationship with the Plaintiffs that required the Defendants to be properly authorized and licensed to provide medical care and treat claimants, honestly treat the claimants, honestly and accurately report on the medical condition of these claimants, and to honestly and accurately submit billings for said treatment and care.

164.     The Defendants understood that these bills and reports would form the basis

FIRST AMENDED
COMPLAINT - 37
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

of Plaintiffs' evaluation of these claims, assessment of the value of each claim, and the amounts to be paid to settle these claims against or by the Plaintiffs' insureds.

165.    By paying then Defendants money to which they had no legitimate right, the Plaintiffs conferred a benefit on the Defendants, about which the Defendants are aware and to which the Defendants were not truly, legally, and/or legitimately entitled.

166.    The money received by the Defendants from the Plaintiffs, to which the Defendants were not entitled, have unjustly enriched the Defendants at the expense of the Plaintiffs.

167.    By the conduct of the Defendants in order to fraudulently obtain insurance proceeds by false pretenses, it would inequitable for Defendants to retain the benefit of the payments made by the Plaintiffs.

168.    The Plaintiffs demand judgment against the Defendants individually, jointly, and separately and that this Court impose a constructive trust upon the Defendants in an amount representing those funds received by the Defendants from the Plaintiffs.

## **PRAYER FOR RELIEF**

1.    That the Plaintiffs be awarded a judgment in their favor for each of the Counts set forth in this Complaint;

2.    For damages consisting of, but not limited to, the following:

    a.    Actual and consequential damages, including economic, general and special damages, caused by the Defendants' conduct as alleged herein;

    b.    Treble damages as permitted by the Federal RICO Act;

    c.    Treble damages as permitted by the Washington Profiteering Act;

    d.    Treble damages as permitted by the Washington CPA;

    c.    Attorney's fees and all costs, including all pre-litigation investigation expenses and expert expenses, incurred by the Plaintiffs as a result of the Defendants' conduct as permitted by both Federal and Washington state law both before and after the filing of this Complaint;

FIRST AMENDED
COMPLAINT - 38
Case No. 3:13-CV-05214-RBL

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

1    d.    For Judgment that the Defendants disgorge to the Plaintiffs all

2  amounts received by the Defendants from the Plaintiffs.

3    3.    For Judgment in favor of the Plaintiffs for damages arising from the billing

4  of unreasonable, unnecessary, and illegal healthcare services by the Defendants.

5    4.    For a Constructive Trust over the Defendants for damages arising from the

6  billing of unreasonable, unnecessary, and illegal healthcare services by the Defendants.

7    5.    For pre-judgment and post-judgment interest as allowed by law;

8    6.    For joint and several liability against all Defendants under all causes of

9  action pled above; and

10    7.    That Plaintiffs be awarded such other and further relief as the Court deem

11  just and proper.

12  DATED: February 12, 2015              McCORMICK BARSTOW, LLP

13

14

15  By:    _s/Eron Z. Cannon_____
          Eron Z. Cannon, WSBA 42706
16        eron.cannon@mccormickbarstow.com

17  By:    _s/Michael J. Schmidt_____
          Michael J. Schmidt, WSBA 43582
18        michael.schmidt@mccormickbarstow.com

19  By:    _s/Jennifer M. Smitrovich_____
          Jennifer M. Smitrovich, WSBA 37062
20        jennifer.smitrovich@mccormickbarstow.com

21
          800 5th Avenue, Suite 4100
22        Seattle, Washington 98104
          Phone (206) 576-3700
23        Fax (206) 576-3720

24
          Attorneys for ALLSTATE INSURANCE
25        COMPANY, ALLSTATE PROPERTY &
          CASUALTY INSURANCE COMPANY,
26        ALLSTATE INDEMNITY COMPANY, and
          ALLSTATE FIRE & CASUALTY
27        INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the state of Washington that the following is true and correct.

I am over the age of 18, competent to testify, not a party to this action, and employed by the firm of McCormick, Barstow, Sheppard, Wayte & Carruth LLP.   On the date set forth below, I served the document(s) to which this is attached in the manner noted, on the following person(s):

Dubs Herschlip                              *Counsel for Nandy, Inc. and*
Dath PLLC                                   *Nathan Lemings*
Box 208
627 5th Street, Suite 101B
Mukilteo, WA  98275
dubsherschlip@gmail.com

Andrew Jacobs                               *Pro Se*
5630 Hurford Court
Agoura Hills, CA   91301
andy_jacobs1@hotmail.com


Melanie Jacobs                              *Pro Se*
23838 Pacific Coast Hwy #308
Malibu, CA   90265-4558
mellyjacobs@hotmail.com


SIGNED at Seattle, Washington, this 12th day of February, 2015.

Rachel A. West

FIRST AMENDED
COMPLAINT - 40
Case No. 3:13-CV-05214-RBL

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
Ph. (206) 576-3700

EXHIBIT A

| | Claimant Initials | Allstate Claim Number | Date of Loss | Claimant's Attorney |
|---|---|---|---|---|
| 1 | J.A. | 0213560105 | 08/12/11 | |
| 2 | K.A. | 5530715605 | 10/17/06 | |
| 3 | M.A. | 0219941084 | 09/19/11 | Law Office of McLaughlin & Associates |
| 4 | R.A. | 0211654645 | 07/25/11 | |
| 5 | E.A. | 0131682767 | 02/26/09 | |
| 6 | L.A. | 0131682767 | 02/26/09 | |
| 7 | J.A. | 0187193420 | 12/29/10 | Law Office of McLaughlin & Associates |
| 8 | A.A. | 0137124979 | 05/02/09 | Law Office of McLaughlin & Associates |
| 9 | K.A. | 0107764409 | 02/16/08 | Law Office of McLaughlin & Associates |
| | K.A. | 5530218485 | 08/22/06 | |
| 10 | T.B. | 0144414174 | 07/21/09 | |
| 11 | N.B. | 0110245610 | 04/25/08 | Law Office of McLaughlin & Associates |
| 12 | A.B. | 5530336923 | 10/28/06 | |
| 13 | B.B. | 5530555134 | 02/15/07 | Law Office of McLaughlin & Associates |
| 14 | D.B. | 0117158955 | 09/03/08 | Law Office of McLaughlin & Associates |
| 15 | J.B. | 0138017777 | 05/11/09 | |
| 16 | K.B. | 0161894373 | 03/01/10 | |
| 17 | M.B. | 0183913011 | 11/26/10 | |
| 18 | B.B. | 0143635175 | 07/17/09 | |
| 19 | J.C. | 0200512945 | 04/26/11 | |
| 20 | M.C. | 0183010693 | 11/17/10 | Law Office of McLaughlin & Associates |
| 21 | K.C. | 0162065775 | 03/02/10 | Law Office of McLaughlin & Associates |
| 22 | V.C. | 0108771254 | 03/17/08 | Law Office of McLaughlin & Associates |
| 23 | P.C. | 5530752533 | 06/06/07 | |
| 24 | M.C. | 0167802370 | 05/14/10 | |
| 25 | L.C. | 0129012316 | 12/15/08 | |
| 26 | J.C. | 0114089592 | 07/14/08 | Law Office of McLaughlin & Associates |
| 27 | J.C. | 5530155794 | 07/19/06 | Law Office of McLaughlin & Associates |
| 28 | D.C. | 5530794907 | 07/16/07 | |
| 29 | A.C. | 0149934423 | 10/02/09 | |
| 30 | R.D. | 0122644981 | 10/31/08 | Law Office of McLaughlin & Associates |
| 31 | S.D. | 0158059618 | 01/07/10 | |
| 32 | G.D. | 0138998561 | 05/25/09 | Law Office of McLaughlin & Associates |
| 33 | S.D. | 0167126838 | 05/06/10 | |
| 34 | B.D. | 0149709544 | 09/30/09 | Law Office of McLaughlin & Associates |
| 35 | N.D. | 0233819291 | 01/30/12 | |
| 36 | L.D. | 0161941216 | 03/01/10 | Law Office of McLaughlin & Associates |
| 37 | V.D. | 0108868647 | 03/20/08 | |
| 38 | S.E. | 5530745735 | 06/15/07 | |
| 39 | T.E. | 0163821507 | 03/24/10 | |
| 40 | M.E. | 0115305021 | 08/04/08 | |
| 41 | Z.E. | 5530024750 | 05/06/06 | |
| 42 | T.F. | 0136453461 | 04/25/09 | |
| 43 | J.F. | 0109310169 | 04/02/08 | |
| 44 | T.F. | 0109310169 | 04/02/08 | |
| 45 | S.G. | 0144229036 | 07/25/09 | |
| 46 | D.G. | 5530588283 | 03/15/07 | |
| 47 | C.G. | 5530744654 | 06/16/07 | |
| 48 | R.G. | 0218866044 | 09/16/11 | Law Office of McLaughlin & Associates |
| 49 | D.G. | 5530361012 | 11/10/06 | |
| 50 | L.G. | 5530361012 | 11/10/06 | |
| 51 | A.H. | 0160744546 | 2/15/2010 | |
| 52 | M.H. | 0160744546 | 2/15/2010 | |
| 53 | S.H. | 0160744546 | 2/15/2010 | |
| 54 | T.H. | 0240365312 | 04/03/12 | |
| 55 | J.H. | 0105733182 | 11/23/07 | |
| 56 | J.H. | 0133582114 | 03/24/09 | Law Office of McLaughlin & Associates |
| | J.H. | 1771776427 | 09/09/10 | Law Office of McLaughlin & Associates |

| | J.H. | 0177191244 | 09/09/10 | Law Office of McLaughlin & Associates |
|---|---|---|---|---|
| 57 | J.H. | 0135259844 | 04/13/09 | Law Office of McLaughlin & Associates |
| 58 | L.H. | 5530094258 | 06/07/06 | |
| 59 | S.H. | 0192590917 | 02/17/11 | Law Office of McLaughlin & Associates |
| 60 | G.H. | 0123009144 | 11/06/08 | Law Office of McLaughlin & Associates |
| 61 | B.H. | 0106563448 | 01/07/08 | |
| 62 | T.H. | 0145813630 | 08/16/09 | Law Office of McLaughlin & Associates |
| 63 | L.H. | 0161146337 | 02/19/10 | |
| 64 | M.H. | 0106714090 | 01/10/08 | Law Office of McLaughlin & Associates |
| 65 | M.H. | 0175084052 | 08/11/10 | Law Office of McLaughlin & Associates |
| 66 | A.J. | 0198279564 | 04/10/11 | |
| | A.J. | 0198590630 | 04/10/11 | |
| 67 | D.J. | 0230749186 | 12/30/11 | |
| 68 | S.J. | 0230749186 | 12/30/11 | |
| 69 | P.J. | 5531011863 | 01/16/08 | Law Office of McLaughlin & Associates |
| 70 | J.J. | 5530155794 | 07/19/06 | Law Office of McLaughlin & Associates |
| 71 | D.J. | 0181710930 | 11/03/10 | |
| 72 | A.J. | 5530218485 | 08/22/06 | |
| 73 | B.J. | 0137151635 | 05/03/09 | Law Office of McLaughlin & Associates |
| 74 | J.J. | 0178140109 | 09/21/10 | |
| 75 | N.K. | 0181612649 | 11/02/10 | |
| 76 | N.K. | 0182599893 | 11/11/10 | |
| 77 | C.K. | 0196096746 | 03/22/11 | |
| 78 | M.K. | 0121771174 | 10/20/08 | |
| 79 | C.K. | 0163357296 | 03/18/10 | |
| 80 | J.K. | 0197102882 | 03/28/11 | |
| 81 | C.K. | 2489870712 | 04/13/06 | Law Office of McLaughlin & Associates |
| 82 | A.K. | 0127655678 | 01/07/09 | |
| 83 | J.K. | 0112694716 | 06/16/08 | |
| 84 | M.K. | 0163141153 | 03/12/10 | Law Office of McLaughlin & Associates |
| 85 | H.L. | 0194221297 | 03/04/11 | Law Office of McLaughlin & Associates |
| 86 | S.L. | 0190407964 | 01/29/11 | |
| 87 | A.L. | 0217486554 | 09/07/11 | |
| 88 | M.L. | 2489862537 | 04/08/06 | |
| 89 | S.L. | 0123227332 | 11/10/08 | Law Office of McLaughlin & Associates |
| 90 | A.L. | 5530555134 | 02/15/07 | Law Office of McLaughlin & Associates |
| 91 | J.L. | 0167246644 | 05/07/10 | |
| 92 | D.L. | 0159615730 | 01/31/10 | Law Office of McLaughlin & Associates |
| 93 | D.L. | 5531372463 | 07/01/09 | |
| 94 | C.M. | 0208552975 | 06/28/11 | Law Office of McLaughlin & Associates |
| 95 | O.M. | 0154576607 | 11/24/09 | |
| 96 | K.M. | 5530706554 | 05/25/07 | Law Office of McLaughlin & Associates |
| 97 | N.M. | 5530706554 | 05/25/07 | Law Office of McLaughlin & Associates |
| 98 | C.M. | 0190643783 | 01/29/11 | |
| 99 | M.M. | 0169908851 | 06/08/10 | |
| 100 | C.M. | 0191355015 | 02/07/11 | Law Office of McLaughlin & Associates |
| 101 | G.M. | 0210817920 | 06/14/11 | |
| 102 | M.M. | 0237593603 | 03/08/12 | |
| 103 | D.M. | 0157475617 | 01/04/10 | |
| 104 | G.M. | 0109745355 | 03/24/08 | |
| 105 | M.M. | 0172841918 | 07/15/10 | Law Office of McLaughlin & Associates |
| 106 | K.M. | 0106789183 | 01/14/08 | Law Office of McLaughlin & Associates |
| 107 | J.N. | 0110145877 | 04/20/08 | |
| 108 | S.N. | 0165200585 | 04/09/10 | Law Office of McLaughlin & Associates |
| 109 | W.N. | 0174534388 | 08/04/10 | Law Office of McLaughlin & Associates |
| 110 | M.N. | 0229341698 | 12/16/11 | |
| 111 | G.N. | 0145750113 | 08/14/09 | Law Office of McLaughlin & Associates |
| 112 | J.N. | 0209454859 | 07/06/11 | Law Office of McLaughlin & Associates |
| 113 | A.O. | 0127655678 | 01/07/09 | |

| 114 | M.O. | 0225302355 | 11/08/11 | Law Office of McLaughlin & Associates |
|-----|------|------------|----------|----------------------------------------|
| 115 | J.O. | 0210765095 | 07/18/11 | |
| 116 | J.P. | 0105410518 | 10/31/07 | |
| 117 | J.P. | 5530643799 | 04/11/07 | Law Office of McLaughlin & Associates |
| 118 | P.P. | 0198442030 | 04/11/11 | Law Office of McLaughlin & Associates |
| 119 | S.P. | 0121643431 | 10/16/08 | Law Office of McLaughlin & Associates |
| 120 | H.P. | 5530435261 | 12/14/06 | |
| 121 | L.P. | 5530435261 | 12/14/06 | |
| 122 | K.P. | 0146293733 | 08/21/09 | Law Office of McLaughlin & Associates |
| 123 | E.R. | 0143163764 | 07/11/09 | Law Office of McLaughlin & Associates |
| 124 | B.R. | 5530582286 | 03/12/07 | Law Office of McLaughlin & Associates |
| 125 | M.R. | 0153206073 | 11/06/09 | Law Office of McLaughlin & Associates |
| 126 | M.R. | 0153206073 | 11/06/09 | Law Office of McLaughlin & Associates |
| 127 | J.R. | 2488292661 | 01/14/06 | |
| 128 | C.R. | 0104889555 | 09/27/07 | Law Office of McLaughlin & Associates |
| 129 | D.R. | 0104889555 | 09/27/07 | Law Office of McLaughlin & Associates |
| 130 | M.R. | 0170899446 | 06/08/10 | |
| 131 | R.R. | 0198981235 | 04/14/11 | |
| 132 | K.R. | 2489188595 | 02/24/06 | |
| 133 | H.S. | 0123529729 | 11/12/08 | |
| 134 | D.S. | 0168750602 | 05/26/10 | |
| 135 | D.S. | 0162228092 | 03/05/10 | |
| 136 | R.S.H. | 0105626550 | 10/15/07 | Law Office of McLaughlin & Associates |
| 137 | D.S. | 0188955488 | 01/15/11 | Law Office of McLaughlin & Associates |
| 138 | J.S. | 5530582286 | 03/12/07 | Law Office of McLaughlin & Associates |
| 139 | T.S. | 0207074386 | 06/16/11 | |
| 140 | V.S. | 5530253417 | 09/08/06 | |
|     | V.S. | 5530675643 | 09/08/06 | |
| 141 | B.S. | 0105169964 | 10/18/07 | Law Office of McLaughlin & Associates |
| 142 | C.S. | 0105169964 | 10/18/07 | Law Office of McLaughlin & Associates |
| 143 | B.S. | 5530237899 | 08/29/06 | Law Office of McLaughlin & Associates |
| 144 | C.S. | 5530237899 | 08/29/06 | Law Office of McLaughlin & Associates |
| 145 | K.S. | 5530237899 | 08/29/06 | Law Office of McLaughlin & Associates |
| 146 | L.S. | 5530237899 | 08/29/06 | Law Office of McLaughlin & Associates |
| 147 | M.S. | 5530237899 | 08/29/06 | Law Office of McLaughlin & Associates |
| 148 | D.S. | 5530289783 | 10/01/06 | Law Office of McLaughlin & Associates |
| 149 | R.S. | 2487938801 | 09/29/05 | Law Office of McLaughlin & Associates |
| 150 | V.S. | 0138256813 | 05/14/09 | Law Office of McLaughlin & Associates |
| 151 | L.S. | 0141414516 | 06/21/09 | Law Office of McLaughlin & Associates |
| 152 | B.S. | 0257620245 | 9/2/2012 | |
| 153 | S.S. | 0156412637 | 12/15/09 | Law Office of McLaughlin & Associates |
| 154 | S.S. | 0186077350 | 12/16/10 | Law Office of McLaughlin & Associates |
| 155 | Z.S. | 0110162633 | 04/23/08 | |
| 156 | J.T. | 0150710150 | 09/21/09 | |
|     | J.T. | 0161521406 | 02/22/10 | |
| 157 | J.T. | 0164136459 | 12/15/08 | |
| 158 | L.T. | 5530557890 | 02/25/07 | Law Office of McLaughlin & Associates |
| 159 | C.T.P. | 0175084052 | 08/11/10 | Law Office of McLaughlin & Associates |
| 160 | S.T. | 0108692641 | 03/14/08 | |
| 161 | C.T. | 0154666911 | 11/26/09 | |
| 162 | S.T. | 0154666911 | 11/26/09 | |
| 163 | B.T. | 5530514495 | 01/18/07 | Law Office of McLaughlin & Associates |
| 164 | T.T. | 0109977040 | 04/18/08 | |
| 165 | R.T. | 2489839963 | 03/01/06 | |
| 166 | R.V. | 0232966358 | 01/23/12 | Law Office of McLaughlin & Associates |
| 167 | S.W. | 0196054258 | 03/21/11 | |
| 168 | E.W. | 0237908660 | 03/09/12 | |
| 169 | R.W. | 0144592789 | 07/30/09 | Law Office of McLaughlin & Associates |
| 170 | D.W. | 0109347914 | 04/03/08 | Law Office of McLaughlin & Associates |
| 171 | D.W. | 0149936469 | 10/03/09 | |

| 172 | L.W. | 5530524338 | 02/06/07 | Law Office of McLaughlin & Associates |
|-----|------|------------|----------|----------------------------------------|
| 173 | D.W. | 0215096289 | 08/24/11 | |
| 174 | P.W. | 0108867789 | 03/14/08 | |
| 175 | J.W. | 5530287217 | 09/29/06 | |
| 176 | R.W. | 5530287217 | 09/29/06 | |
| 177 | C.W. | 2489182101 | 03/04/06 | |
| 178 | A.W. | 0137151635 | 05/03/09 | Law Office of McLaughlin & Associates |
| 179 | L.Z. | 2489199278 | 03/14/06 | |