| | |
|---|---|
| | Hon. Ronald B. Leighton |

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>TACOMA THERAPY, INC., TACOMA REHABILITATION THERAPY, INC., P.S., ANDREW JACOBS, MELANIE JACOBS, NANDY, INC., NATHAN LEMINGS AND JANE DOE LEMINGS, husband and wife, and the marital property thereof, THE LAW OFFICE OF MCLAUGHLIN & ASSOCIATES, INC., WESLEY MCLAUGHLIN AND JANE DOE MCLAUGHLIN, husband and wife, and the marital property thereof, DIRECT SOLUTIONS MARKETING, INC., DOES 1-100 and ROES 101-200,<br><br>Defendants. | Case No. 3:13-cv-5214<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>**RE: DAMAGES** |

# I.
# INTRODUCTION

The following constitutes Plaintiffs, Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Allstate Fire & Casualty Insurance Company's ("Allstate") trial brief in regards to the damage portion of this action. As

TRIAL BRIEF (3:13-cv-5214) - 1

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

the Court is aware, the Court granted Allstate's motion for partial summary judgment as it pertains to the issue of liability as to all six of the causes of action as detailed in First Amended Complaint. Specifically this Court found that: "There are no genuine issues of material fact to be determined by a fact finder. Defendant Andrew Jacobs ("Jacobs") and Direct Solutions Marketing ("DSM"), are hereby found liable to Allstate under the following causes of action as it relates to the 179 claims at issue in this matter:

> Count One: Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(c) – Conduct of Enterprise Through Racketeering
>
> Count Two: Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(d) – Conspiracy
>
> Count Three: Washington RICO Violations – RCW 9A.82.100
>
> Count Four: Fraud and Intentional Misrepresentation
>
> Count Five: Conspiracy to Defraud
>
> Count Six: Violation of the Washington Consumer Protection Act, RCW 19.86, *et seq"* (Doc. No. 176)

As it pertains to this phase of the trial regarding damages, Allstate is seeking damages solely under the first two causes of action for violations of the RICO statute and for conspiracy.

The evidence is undisputed that Jacobs masterminded a complex fraud scheme involving numerous individuals and business entities, where the sole purpose was to fraudulently inflate medical bills and associated personal injury settlements paid by insurance companies such as Allstate. Jacobs improperly and illegally owned and controlled businesses, including two healthcare entities and a law firm, that he used to run up unnecessary medical billings and associated personal injury settlements, which were paid by auto insurance carriers such as Allstate. Jacobs used improper referral and kickback schemes with payoffs to other medical providers, tow truck companies, and collision centers to drum up business for his massage and physical therapy clinics. He also used kickbacks with his own healthcare employees to get referrals to his law firm, in order to keep as much control as possible over the money generated from the improper treatment at his clinics. Jacobs started and used DSM to launder money from

his illegally-owned law firm, moving the money both back into his pocket and using it as a slush fund for the illegal kickbacks and payoffs. Allstate was a victim of this fraud scheme, and by this action seeks to recoup money paid on underlying claims pursuant to Allstate auto policies in the amount of $889,860.39, separate and apart from treble damages, pre-judgment and post-judgment interest and attorneys' fees incurred in litigating this action.

## II.

## **BACKGROUND FACTS**

As noted above, this Court granted Allstate's motion for partial summary judgment as it pertains to the issue of liability as to all six of the causes of action as detailed in First Amended Complaint. Specifically this Court found that: "There are no genuine issues of material fact to be determined by a fact finder. Defendant Andrew Jacobs and Direct Solutions Marketing, are hereby found liable to Allstate under the following causes of action as it relates to the 179 claims at issue in this matter:

Count One: Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(c) – Conduct of Enterprise Through Racketeering

Count Two: Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(d) – Conspiracy

Count Three: Washington RICO Violations – RCW 9A.82.100

Count Four: Fraud and Intentional Misrepresentation

Count Five: Conspiracy to Defraud

Count Six: Violation of the Washington Consumer Protection Act, RCW 19.86, *et seq"* (Doc. No. 176)

In lieu of repeating the 98 Undisputed Material Facts as found in the motion for partial summary judgment (Doc. No. 157-3)[1], that have been deemed establish in light of the ruling on the motion for partial summary judgment, for purposes of simplifying this matter, Allstate intends to refer to those facts herein that specifically support Allstate's request for $889,860.39 in damages arising out of the violation of Federal RICO and for conspiracy, as opposed to rehashing

---

[1] This document is attached here as Exhibit A for ease of reference by the Court.

testimony pertaining to liability. While Allstate discusses the issue of causation herein, it is solely done to lead to its broader discussion on the issue of damages. Allstate recognizes that causation is an element that was part of the original ruling granting the partial motion for summary judgment. Further, as it pertains to this phase of the trial regarding damages, Allstate is seeking damages solely under the first two causes of action for violations of the RICO statute and for conspiracy.

There are three key witnesses Allstate intends to call to support its claim for damages. The first is Joe Rocha. Rocha is an employee of Allstate Insurance Company out of Stockton, California. He is a Senior Special Investigative Unit (SIU) Field Analyst. As an SIU Analyst, his duties involve investigating medical providers and other persons and entities that may have defrauded Allstate through various means. He typically assists in the process of analyzing, evaluating, and ultimately providing a recommendation to his superiors at Allstate whether or not to pursue legal action to recover the monies fraudulently taken from Allstate.

Rocha will testify that pursuant to Auto Insurance policies issued to the underlying claimants at issue in this litigation, after review by claims personnel, Allstate paid Tacoma Therapy, Inc. ("TMT") and/or Tacoma Rehabilitation Therapy, Inc. ("TRT"), directly on Personal Injury Protection ("PIP") claims when TRT and TMT would submit their invoices to Allstate, either by mail, email, or fax, for reimbursement under the respective Allstate auto policy's PIP coverage.

Rocha will also testify to the fact that separate and apart from PIP coverage, pursuant to Bodily Injury ("BI") or Underinsured Motorist ("UIM") coverage in Auto Insurance policies issued by Allstate to underlying claimants at issue in this litigation, attorneys representing the injured party would make a settlement demand upon Allstate based in part on documentation and billing from TMT and TRT. The settlement demand packages, which included the TMT/TRT invoices, were sent to Allstate, either by U.S. Mail, email, or facsimile. After review by claims personnel, Allstate would issue settlement payments to attorneys for the underlying claimants based on the misrepresentations contained therein.

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

Allstate also relied upon the factual representations made by Jacobs and DSM, through invoices and communications submitted directly from TMT and TRT, in evaluating claims made by the underlying claimants pursuant to Allstate policies of insurance. TMT/TRT invoices were sent directly to Allstate, either by U.S. Mail, email, or facsimile. Allstate issued payments on the underlying claims based on the misrepresentations contained in those invoices.

Allstate also relied up on the factual representations made by Defendants, through communications received from McLaughlin Law and other law firms involving treatment at TMT and TRT, in evaluating claims made by the underlying claimants pursuant to Allstate policies of insurance. Those communications were sent directly to Allstate, either by U.S. Mail, email, or facsimile. Allstate issued payments on the underlying claims based on the factual misrepresentations.

All checks issued by Allstate on the underlying claims were processed from Houston, Texas, and sent to Washington through U.S. Mail. According to Rocha, had Allstate been aware of the fraud being conducted by Defendants, it would not have paid any amount directly to TMT and TRT for the purported services provided to the underlying claimants on PIP claims, nor would Allstate have considered TMT and TRT invoices submitted as part of any settlement demand package in evaluating any BI or UIM claim.

Rocha will also testify to the fact that Allstate's total payments to TMT and TRT on the 179 underlying claims at issue, and the claimed share of general damages associated with the McLaughlin Law firm, totals $899,860.39.

Further, Jacobs and Melanie Jacobs, through their ownership and control of TMT and TRT, were violating the corporate practice of medicine doctrine. As such, all bills derived from TMT and TRT's operations were illegal, unreasonable, and unnecessary. Allstate's expert, John C. Peick, Esq., will also testify. He is a Washington licensed attorney with substantial experience in healthcare law. Mr. Peick reviewed numerous documents regarding Jacobs' ownership and operation of TMT and TRT. In Mr. Peick's expert opinion, as detailed in his expert report, it is illegal for laypersons to own or operate a healthcare facility. Specifically, licensed healthcare

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

providers may only operate as a professional service corporation (PS), professional limited liability company (PLLC), or limited liability partnership (LLP) in the State of Washington, and unlicensed persons may not be shareholders, directors, or officers in a PS, PLLC, or LLP. Mr. Peick is further of the opinion that healthcare practices operated by laypersons are engaged in the illegal practice of medicine, and therefore the billings of illegal entities are void and unenforceable and subject to recoupment by the payor. It is undisputed that Jacobs was not a licensed massage therapist or physical therapist, and therefore could not own a massage clinic or therapy clinic. Where Jacobs was an owner, controlling officer, and manager of TMT and TRT, the billing for services from these clinics are illegal and unenforceable. Jacobs managed and controlled TMT and TRT up until September 2012, when he sold both entities.

Jacobs' illegal and improper medical treatment scheme was quite effective at inflating treatment well beyond what was medically necessary. Allstate's expert, Dr. Edward Dagher, will also testify. He is a Board certified physiatrist, well-versed in assessing physical therapy and massage therapy treatment received by the underlying claimants at issue here. Dr. Dagher reviewed medical records and bills for all 179 of the underlying claims at issue in this case. In his expert opinion, which is detailed in his expert report, Dr. Dagher concluded that the records contained:

- patterns of pre-determined, pre-programmed, unsubstantiated care that had nothing to do with patient care;
- exaggerated clinical findings;
- metastasis of treatment;
- inappropriate referrals;
- unreasonable charges;
- misleading clinical information;
- reports of physical findings that were not supported within reasonable medical probability;
- modes of care that were not supported as medically necessary;

TRIAL BRIEF (3:13-cv-5214) - 6

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

•   clearly excessive treatments; and

•   unreasonably high charges for treatments.

These findings lead Dr. Dagher to conclude that the course of treatment provided at both TMT and TRT was often exaggerated. In his report, Dr. Dagher goes on to opine about the proper level of treatment that was likely reasonable and necessary for a given underlying claimant. In the vast majority of cases, Dr. Dagher recommended a substantial reduction in the number of treatments rendered at TMT and TRT.

### III.
### LEGAL ARGUMENT

#### A. Allstate Is Entitled To Damages

##### 1. *The Racketeering Activities of Jacobs and DSM were the Proximate Cause of Allstate's Injuries*

RICO plaintiffs must demonstrate that they were proximately injured "by reason of" the alleged racketeering activity of the defendant. (18 U.S.C. §1964(c).)[2] "It is well settled that, to maintain a civil RICO claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury" as well as directly caused it. (*Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir.2004).); *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2007).) To demonstrate injury for RICO purposes, plaintiff must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. Plaintiff also must satisfy the RICO causation element by demonstrating that the defendants' conduct directly and proximately caused the alleged injury. (*Id.*, at 825.)

Proximate cause is a flexible concept that does not lend itself to "a black-letter rule that will dictate the result in every case." (*Holmes v. Sec. Investor Prot. Corp.* (U.S. 1992) 503 U.S. 258, 272, fn. 20.) Instead, the Court uses "'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts," (*Id.* at 268)

---

[2] As noted above, while Allstate discusses the issue of causation herein, it is solely done to lead to its broader discussion on the issue of damages. Allstate recognizes that causation is an element that was part of the original ruling granting the partial motion for summary judgment.

with a particular emphasis on the "demand for some direct relation between the injury asserted and the injurious conduct alleged." (*Ibid.*; see also *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ["When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries"].)

"[Plaintiffs] are not required to show that each individual predicate act caused them an injury, but rather that the pattern of racketeering activity did." *Just Film, Inc. v. Merch. Servs., Inc.*, 2012 WL 6087210, *12 (N.D. Cal. 2012), *citing Sedima S.P.R.L., v. Imrex Co.*, 473 U.S. 479 (1985). Specifically, the *Sedima* Court held as follows:

> Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm from the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement *Id.* at 495,

"[A] plaintiff need not demonstrate injury to himself from each and every predicate act making up the RICO claim." *Just Film, Inc.*, *supra*, 2012 WL 6087210 at *12, *quoting Corley v. Rosewood Care Ctr.,* 388 F.3d 990, 1004 (7th Cir.2004). "Instead, the plaintiff must prove only an injury directly resulting from some or all of the activities comprising the violation." *Just Film, Inc.*, *supra*, 2012 WL 6087210 at *12, *quoting Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809 (7th Cir.1987); *also citing Deppe v. Trippe,* 863 F.2d 1356, 1366 (7th Cir.1988); *Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1268 (3d Cir. 1987).

In *Deppe*, *supra*, 863 F.2d at 1366, the Seventh Circuit stated that "no requirement exists that the plaintiff must suffer an injury from two or more predicate acts, or from all of the predicate acts ... Thus, a RICO verdict can be sustained when a pattern of racketeering acts existed, but when only one act caused injury." Similarly, in *Kearny, supra,* 829 F.2d at 1268, the

McCormick Barstow, LLP
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

Third Circuit held that RICO required only injury from any predicate act. The court noted [r]eading into the statute a requirement that a civil plaintiff prove injury from the entire pattern rather than from any predicate act would, we believe, be inconsistent with the core congressional purposes behind its enactment. For example, if an organized crime group were to operate a protection racket, extorting money from each merchant in a community, then each merchant's injury would be separate, and therefore… none could recover." *Id.*

This Court has already found, based on the ruling on the motion for partial summary judgment that there was a clear pattern of racketeering activity. Further, this Court determined that racketeering activity caused damage to Allstate in the form of paying higher settlements of the claims being made against its insureds.

As detailed above, all of the medical bills for services from TMT and TRT arise from illegal entities operated in violation of the corporate practice of medicine and the Washington Professional Service Corporation Act, RCW 18.100, *et seq.*. As such, all bills from both TMT and TRT that were submitted to Allstate and for which Allstate issued a payment, either directly or through third party settlements, were not valid and collectible claims and are subject to recoupment by the payor. (*see Deaton v. Lawson*, 40 Wash. 486, 490, 82 P. 879 (1905); *Sherwood v. Wise*, 132 Wash. 295,300-301, 232 P. 309 (1925); *State ex rel Standard Optical v. Superior Court*, 17 Wash.2d 323, 334-335, 135 P.2d 839 (1943); *State v. Boren*, 36 Wash.2d 522, 531-32, 219 P.2d 566 (1950); *Morelli v. Ehsan*, 110 Wash.2d 555, 560-562, 756 P.2d 129 (1988); *Columbia Physical Therapy v. Benon Franklin Orthopedic Associates, PLLC, et al*, 168 Wash.2d 421, 430-31, 228 P.3d 1260 (2010).)

Allstate has never pursued a private cause of action for violations of the corporate practice of medicine doctrine and the Washington Professional Service Corporation Act. Rather, Allstate is relying upon the illegal and unethical conduct that gives rise to these violations as evidence of a major portion of the racketeering scheme devised by Jacobs and DSM and perpetrated upon Allstate. Allstate is aware of this Court's ruling in *State Farm Insurance Co. v. Jacobs*, Case No. 3:14-CV-05512, and notes that State Farm's causes of action were based upon unjust enrichment

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

and declaratory relief. Allstate's position is factually, procedurally, and legally distinguishable, as Allstate is seeking recovery for damages only through the Federal RICO statutes. The heart of the racketeering activity which supports causation for damages under Federal RICO is the very fact that TMT and TRT were completely illegal operations under the law, which makes any invoice for services ultimately paid by Allstate invalid and uncollectible. The public policy of this state is clear that an illegally operating business, such as TMT and TRT, should not be able to profit in any way from its operations, particularly in the context of the massive fraudulent scheme driven by these operations created for the sole purpose of bilking monies from an insurance carrier all in violation of Federal RICO statutes. To put a slight twist on a phrase from criminal law, Jacobs and DSM should not be allowed to benefit through collecting the fruit of a poisonous tree – the ill-gotten gains from the fraudulent and illegal scheme.

It is important to note that Allstate is not seeking monies back from any patient or the duly licensed massage and physical therapist employees. It is Jacobs and DSM that helped set the framework for a fraudulent operation that was designed to bilk as much as possible from Allstate, all driven by completely illegal operations that could never issue bills to begin with. When the ultimate settlement amount was paid by Allstate, it was TMT and TRT that was paid in full, with the patients in the end not receiving their proportionate share. This complete fraud should result in recoupment of the payments made for all bills from both TMT and TRT that were submitted to Allstate and for which Allstate issued a payment, either directly or through third party settlements.

Moreover, as the Court will hear, Dr. Dagher has concluded that the vast majority of the 179 underlying claimants receive treatment far beyond what was medically necessary. Dr. Dagher will provide his expert opinion on each claim as to what the appropriate level of care would have been had the claimants been treated based on clinical necessity. Because Dr. Dagher has concluded the level of treatment was inflated, Allstate was necessarily damaged where it paid beyond what was medically necessary for these 179 claimants.

As will be detailed in the testimony of witnesses above, Allstate relied on the billings

from TMT and TRT, not knowing that they were illegal operations under the law as a layperson in Jacobs owned and controlled both entities. As is clear under the law, it is illegal for a layperson to own or operate a healthcare facility. Thus, all billings coming out of TMT and TRT were illegal, unreasonable and unnecessary.

### *2. Damages For The Illegal and Improper Medical Treatment*

The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts. *Id.* at 497.

Federal courts have held that where the injury is established, as it has been here through the partial motion for summary judgment, *damages need not be demonstrated with precision. New England Carpenters Health Benefits Fund v. First Databank, Inc.,* 248 F.R.D. 363, 371 (D. Mass. 2008). In relating RICO cases to antitrust cases, the Court concluded, where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it will be enough if the evidence shows the extent of damage as a matter of just and reasonable inference, although the result is only an approximate. *Id.* at 371.

Further, the holding in *In re Neurontin Marketing and Sales Practices Litigation,* 712 F.3d 21 (1st Cir. 2013) is important here. Kaiser brought an action against Pfizer for RICO violations and California Unfair Competition law violations arising from Pfizer's efforts to unlawfully market prescription anticonvulsant drug, Neurontin, for off-label uses. After a five week trial the jury found that Kaiser proved that Pfizer violated RICO with respect to its promotion of Neurontin for off label uses and that it caused Kaiser injury. The jury awarded Kaiser damages.

Pfizer argued that the district court erred in its calculation of damages because Kaiser's medical expert used a list of alternatives to Neurontin, but no expert testified that the drugs on the list were at least as effective or as well tolerated as Neurontin. Further Pfzier argued that there was no evidence that doctors would have prescribed those lower-cost alternative drugs but for Pfizer's conduct. Those doctors may have prescribed more expensive drugs instead of Neurontin. Pfizer claims that these assumptions make the estimation of damages too speculative. The Court rejected these assertions:

> The burden of proof as to damages is lower than that for causation, and the factfinder is afforded a great deal of freedom to estimate damages where the defendants, as here, has created the risk of uncertainty. [Citation omitted] The damage inquiry does not allow a defendant to benefit from the scope of its wrongdoing; this is why "(e)ven 'speculation has its place in estimating damages and doubts should be resolved against the wrongdoer. [Citations omitted] *Id.* at 49-50.

The Court found that because Kaiser met the causation requirements with legally sufficient evidence and proved that it suffered economic injury from Pfizer's fraudulent scheme, the Court held that, "On [the damage] phase of the case the plaintiff has a more relaxed burden of proof…, especially if as in this case the defendants' conduct has made it difficult for the plaintiff to prove the precise extent of his damages." *Id.* at 49. The Court held that "Under such circumstances, damages do not need to be proven 'with mathematical certainty, provided an award has a rational basis in the evidence." The Court concluded "Otherwise 'the more grievous the wrong done, the less likelihood there would be of a recovery.'" *Id.* at 49; see *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 265, 66 S.Ct. 574, 580 (1946); *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 367 (9th Cir. 2005) [Federal RICO]; *Southern Wine & Spirits of Nevada v. Mountain Valley Spring Co., LLC,* 646 F.3d 526, 536 (8th Cir. 2011) [An expert's opinion regarding the amount of damages requires only an intelligent estimate.]; *Holland Livestock Ranch v. United States,* 655 F.2d 1002, 1006 (9th Cir. 1981); *Hunt Foods, Inc. v. Phillips,* 248 F.2d 23, 33 (9th Cir. 1957)

The Court added that the district court did not err in accepting Kaiser's doctor's methodology for calculating damages. In fact, "Pfizer never offered an alternative; it did not

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

provide its own list of substitute drugs, nor did it offer testimony about the Kaiser list's exclusion of lamotrigine (the only drug Pfizer names on appeal as improperly excluded." *Id.* at 50.

As established, the sole purpose of the massive illegal scheme here was to fraudulently inflate medical bills and associated personal injury settlements paid by insurance companies such as Allstate. As part of that racketeering activity, Jacobs improperly and illegally owned and controlled businesses, including two healthcare entities and a law firm, that he used to run up unnecessary medical billings and associated personal injury settlements, which were paid by auto insurance carriers such as Allstate. As Joe Rocha will testify, Allstate paid invoices of TRT and TMT for services performed by an illegal operations under Washington law. Allstate seeks total recoupment of all amounts paid, which total $899,860.39. This amount reflects all invoices paid by Allstate to TMT and TRT for their proportionate share of all settlements.

### *B. Allstate is Entitled to Treble Damages*

Allstate is also entitled to treble damages under the Federal RICO causes of action. Section 1964(c) and case law clearly indicate that treble damages are mandatory to a prevailing plaintiff on the Federal RICO causes of action. The treble damages provision of RICO was designed to protect those whose businesses have been infiltrated and damaged by the offenses § 1962 proscribes. *Noland v. Gurley,* 566 F. Supp. 210, 218 (D. Colo. 1983); *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1136 (Mass.1982).

When a plaintiff prevails on Federal RICO claims, under § 1964(c) treble damages are mandatory. The statute states that where the plaintiff is "injured in his business or property" then he "*shall* recover three-fold the damages he sustains" in addition to costs and attorney fees. 18 U.S.C. § 1964(c) (Emphasis added.). The use of the word "shall" in the statute clearly indicates that the awarding treble damages is not discretionary.

Federal Courts have routinely interpreted the language of 1964(c) to mean that treble damages are mandatory.

> It is clear that trial courts and juries are at no liberty under RICO to award any amount less than treble damages. The plain language

TRIAL BRIEF (3:13-cv-5214) - 13

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

> of that statute instructs that injured persons "shall recover" treble damages and costs and attorneys fees. One court thus has observed that civil RICO 'requires' that the successful plaintiff be awarded treble damages.

*Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991), *citing Cullen v. Margiotta,* 811 F.2d 698, 713 (2nd Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) ["civil RICO requires that a successful plaintiff be awarded treble damages."]; *see Allstate Ins. Co. v. Nassiri,* No. 2:08-CV-369 JCM GWF, 2013 WL 3716444, at *1 (D. Nev. 2013) [Having reviewed 18 U.S.C. § 1964©, the court finds that it is required to treble damages.]; *Resolution Trust Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1062 (C.D. Ill. 1994) ["[u]nder RICO, treble damages are mandatorily assessed upon the finding of liability."]; *Allstate Ins. Co. v. Polack*, CV 08-0565 ADS ETB, 2012 WL 4489282 (E.D.N.Y. 2012) report and recommendation adopted, 08-CV-565 ADS ETB, 2012 WL 4490775 (E.D.N.Y. 2012) ["[w]here a plaintiff successfully obtains a judgment of civil liability under RICO, an award of treble damages is mandatory."]; *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367 (E.D.N.Y. 2012).

As stated succinctly in the U.S. District Court for the Central District of California: "[t]he Court agrees that it must treble the $613,350 in compensatory damages because of Monex's RICO claim." *Monex Deposit Co. v. Gilliam*, SACV09287JVSANX, 2010 WL 2380873, *3 (C.D. Cal. May 24, 2010), citing 18 U.S.C. § 1964(c) *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir.1991); *Jones v. Phipps*, 39 F.3d 158, 161 (7th Cir.1994).

Thus, if this Court finds that Allstate is entitled to damages under the Federal RICO 1962(c) and 1962(d) causes of action, the compensatory damages awarded by this Court are required to be trebled by the Court under the Federal RICO causes of action. Accordingly, Allstate seeks a judgment awarding $2,699,581.17 for the Federal RICO causes of action, treble the $899,860.39 of compensatory damages requested to be awarded by this Court.

### *C. Allstate Requests An Award of Prejudgment and Post-Judgment Interest*

An award of prejudgment interest on Allstate's RICO claim is within the Court's sound

discretion. See *Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam,* 952 F.2d 1152, 1165 (9th Cir.1991) ("The award of prejudgment interest in a case arising under federal law rests within the sound discretion of the court.") (citation omitted); see also *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1571 (1st Cir.1994) (decision as to whether to award prejudgment interest under RICO is left to district court's discretion); *Abou–Khadra v. Mahshie,* 4 F.3d 1071, 1084 (2d Cir.1993) (RICO statute does not contain provision barring prejudgment interest, and any such award is discretionary); *Alexander v. Incway Corp.,* No. CV 11-8851 DSF VBKX, 2013 WL 5603932, at *21 (C.D. Cal. 2013).

As for post-judgment interest, "Section [28 U.S.C.] 1961 provides for the mandatory award of post-judgment interest on any money judgment in a civil case recovered in a district court." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coalition of Life Activities*, 518 F.3d 1013, 1017 (9th Cir.2008) (citations and quotations omitted). Post judgment interest runs from the date of a judgment when the damages were supported by the evidence and meaningfully ascertained. Allstate is entitled to post-judgment interest on the damages awarded from the date of judgment at the current statutory rate pursuant to 28 U.S.C. § 1961(a).[3] See *Alexander v. Incway Corp.,* No. CV 11-8851 DSF VBKX, 2013 WL 5603932, at *22 (C.D. Cal. 2013)

Therefore, Allstate requests pre-judgment interest running from the date of the filing of the original complaint on March 21, 2013. Pre-judgment interest is certainly warranted considering that Jacobs and DSM have made no efforts to contest liability as alleged in the original complaint. It is undisputed that Jacobs masterminded a complex fraud scheme involving illegal businesses that led to wholly improper medical treatment. Since the allegations found from the date of the original complaint were ultimately uncontested by Jacobs and DSM, prejudgment interest should be ordered.

---

[3] 28 U.S.C. § 1961(a) provides in relevant part as follows: "Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

TRIAL BRIEF (3:13-cv-5214) - 15

**McCormick Barstow, LLP**
800 5th Avenue, Suite 4100
Seattle, Washington 98104
(206) 576-3700

# IV.
# CONCLUSION

Based on the above, Allstate requests that this Court award compensatory damages in the amount $899,860.39 as it pertains to Counts one and two of the First Amended Complaint. Allstate further requests that this Court grant the request to treble those damages to the amount of $2,699,581.17. In addition, the Allstate asks this Court to award pre-judgment interest from the date of the original complaint filed on March 21, 2013, at the current statutory rate pursuant to 28 U.S.C. § 1961(a), on the amount of the trebled damage award, and that Allstate is entitled to post-judgment interest on the total amount of the judgment, which would include the trebled damage award and pre-judgment interest.

DATED: September 21, 2015    McCORMICK BARSTOW, LLP

By: _____*s/Eron Z. Cannon*_____
Eron Z. Cannon, WSBA 42706
eron.cannon@mccormickbarstow.com

800 5th Avenue, Suite 4100
Seattle, Washington 98104
Phone (206) 576-3700
Fax (206) 576-3720

Attorneys for Plaintiffs

03332-00005 3586706.1

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury under the laws of the state of Washington that the following is true and correct.

I am over the age of 18, competent to testify, not a party to this action, and employed by the firm of McCormick, Barstow, Sheppard, Wayte & Carruth LLP. On the date set forth below, I served the document(s) to which this is attached in the manner noted, on the following person(s):

| | |
|---|---|
| Andrew Jacobs | *Pro Se* |
| 1228 La Cienega #303 | *Via E-Mail and ECF* |
| W. Hollywood, CA 90069 | |
| andy_jacobs1@hotmail.com | |

SIGNED at Seattle, Washington, this 21st day of September, 2015.

/s Justin K. Fodness
Justin K. Fodness